JOSEPH DOUCETTE v. LITTLE FALLS IMPROVEMENT & NAVIGATION COMPANY.[1]

January 14, 1898.

Nos. 10,803—(217).

**Navigable Waters—Rights of Riparian Owners Subordinate to Public—Charge of Court.**

Riparian owners on navigable waters hold their land subordinate to the public use of such waters, if such use is reasonably exercised, precisely as do the owners of land abutting on any other public highway.

**Same—Negligence of Boom Company—Log Jams—Action for Damages—Verdict Sustained by Evidence.**

In an action brought by a riparian owner to recover damages alleged to have been caused by the careless, negligent and wrongful acts of defendant corporation, a boom company, in causing log jams to be formed in a river by means of its piers and booms, whereby the waters were set back upon his land to his injury, it is *held* that the evidence was sufficient to support a verdict in his favor.

Action in the district court for Morrison county to recover $800 for injuries to plaintiff's real estate. From an order, Baxter, J., denying a motion for a new trial after a verdict of $350 for plaintiff, defendant appealed. Affirmed.

*Lindbergh, Blanchard & Lindbergh, Clapp & Macartney* and *J. B. Atwater,* for appellant.

The modern law is that a riparian owner on navigable waters, as well as one owning land abutting on any other public highway, holds his land subordinate to the public use of such waters or

[1] Reported in 73 N. W. 847.        [2] Borough v. County, 28 Minn. 515, at 520.

highway, if such use is reasonably exercised. Osborne v Knife Falls, 32 Minn. 412; Carroll v. Wisconsin, 40 Minn. 168; McKenzie v. Mississippi, 29 Minn. 288; Robinson v. Great Northern, 48 Minn. 445; Kaje v. Chicago, 57 Minn. 422; Field v. Apple River, 67 Wis. 569; Bellinger v. Great Northern, 23 N. Y. 42, approved in 48 Minn. 450; Blyth v. Birmingham, 25 L. J. Exch. 212; London v. Truman, L. R. 11 App. Cas. 45; Central v. Wabash, 57 Fed. 441; Willis v. Winona, 59 Minn. 27; Minneapolis v. Board, 56 Minn. 485.

The evidence failed to make out a case of negligence against defendant. If there is any presumption in this matter it is that the defendant, the agent of the public, properly performs the duties with which it is charged. Wisconsin v. Manson, 43 Wis. 255, 265; Day v. Akeley, 54 Minn. 522.

*John H. Rhodes*, for respondent.

The defense is based upon the claim that defendant is a quasi public corporation, and has the right to form log jams without liability to respondent in damages, unless guilty of negligence. But this claim is contrary to G. S. 1894, § 2633. As to third persons defendant is in the same situation as though it had no rights in the river. Crittenden v. Wilson, 5 Cow. 165; Lee v. Pembroke, 57 Maine, 481; Eastman v. Amoskeag, 44 N. H. 143, 160; Trenton v. Raff, 36 N. J. L. 335; Angell, Water C. § 476. An act of God will excuse defendant. An act of God does not include those floods which happen so often that men of ordinary prudence are expected to calculate upon them. McCoy v. Danley, 20 Pa. St. 85; Nitro Phosphate v. London, 1 Eng. Ruling Cas. 276.

COLLINS, J.

Defendant is a corporation organized under the provisions of G. S. 1894, c. 34, tit. 1. The general nature of its business is to improve a certain specified portion of the Mississippi river, and to drive, hold and handle logs therein. It is therefore amenable to the provisions of G. S. 1894, § 2633. It has built piers in the river within its territory, and has constructed and maintained log booms in connection therewith. In fact, it has very extensive works of this character at and above the city of Little Falls, upon said river.

The plaintiff is a riparian owner, several miles above said city,

and some distance above defendant's upper, or what is known as Belle Prairie, boom. He brought this action to recover damages for injuries to his farm, said to have been the result of defendant's careless, negligent and wrongful acts in the year 1896, whereby it caused large log jams to be formed in the river by means of its piers and booms, by which the water in the river was raised so as to inundate a portion of his land to the depth of eight feet for some three months, and to injure the soil and destroy the trees thereon. The jury found for the plaintiff, and defendant's appeal is from an order denying its motion for a new trial.

The case was submitted to the jury upon the theory that the plaintiff could not recover unless the defendant corporation had been guilty of carelessness or negligence in the exercise of its corporate powers; and the jury was charged that the main questions for determination were whether the booms and piers were properly constructed, and whether defendant could not, in the exercise of proper and ordinary care, have avoided the infliction of damages upon plaintiff by means of the log jams which rested upon and were caused by its piers and booms. To the charge as given, plaintiff's counsel took no exceptions. In so far as he is concerned, it is the law of the case, and the charge was undoubtedly based upon the proposition that a riparian owner on navigable waters holds his land subordinate to the public use of said waters, if such use is reasonably exercised, precisely as does the owner of land abutting upon any other public highway.

Now, under this principle of law and the charge, counsel for defendant contend—First, that plaintiff's proofs were not legally sufficient to raise a presumption of carelessness or negligence on the part of their client; and, second, that, if such a presumption was raised, it was conclusively rebutted by all of the evidence in the case. In other words, it is contended that under the rules of law laid down by the trial court in its charge, and acquiesced in by plaintiff's counsel, the evidence was insufficient to justify the verdict.

It appeared from the testimony that defendant built its piers in the winter of 1892–93. It strung its booms as occasion required. Its main works were below Belle Prairie boom, in the vicinity of

Little Falls. All of its works were constructed and operated for the purpose of stopping logs as they were running or being driven down the river, so that those designed for manufacture into lumber by the Pine Tree Lumber Company at its mills at the place last mentioned could be boomed with the entire mass, and then sorted out, the balance, when turned out of the booms, going to points below. The Belle Prairie boom was designed to hold logs back from the sorting works until such time as the sorting could be done, and then they were to be dropped down as convenient.

In the fall of 1895, about ten million feet of logs ran into the Belle Prairie boom, and were left there, according to the uncontradicted evidence, "to strengthen our works." They were held "largely as a cushion to our works," and "as a protection to the works." In the spring, about the middle of April, the water rose rapidly; the ice came down in large blocks; and the water, ice and logs tore out a new channel upon the east side, breaking the boom between the east bank and the nearest pier, through which the logs swept down upon the lower works until there had gathered at least fifty million feet. Within a few days the Belle Prairie boom was repaired and closed up, the purpose being to prevent any more logs running down into the sorting works. It remained closed, and a jam of several hundred million feet of logs formed there, extending back four or five miles, and flooding plaintiff's land to the depth of eight feet for a period of three months.

Witnesses for defendant testified that defendant's works were properly constructed, and also that everything possible was done to open both jams, the one at the sorting works and that at Belle Prairie boom. These witnesses also testified that, while the upper jam might have been opened earlier, it would have been dangerous to the logs and works below, and even to the people dwelling in Little Falls; and they also testified that, taking the amount and condition of the ice, the suddenness of the rise of water, and the amount of logs in the river, the conditions were altogether unusual and unprecedented.

Taking, first, the contention that the works were properly constructed, and that the case was bare of any evidence tending to

71 M.—14

show the contrary, it is to be noticed that it is no slight undertaking for the defendant to construct works which will be sufficiently strong for the acknowledged purpose for which these were built.  Not only must the rights of riparian owners above and below the works be considered, but the rights of other parties who are interested in logs destined for points below the defendant's territory.  A great responsibility rests upon persons—natural or artificial—who undertake such an enterprise as this was; and in the building of their works, as well as in the management thereof, they must exercise care commensurate with the dangers ordinarily to be apprehended.  But when it appeared in evidence that the Belle Prairie boom was so constructed as to need "protection" and a "cushion" of ten million feet of logs to "strengthen" it, and notwithstanding this it broke, letting its contents down upon the sorting works, whereby they were put in danger, the jury was warranted in finding that defendant's works were not properly built, and that it had not exercised the care required in managing the same.

The jury was also warranted in finding that it was mismanagement and negligence on the part of defendant to keep this quantity of logs at the boom, to become mixed up with logs and ice floating down the river, in the ensuing spring, with this high water. As against the expert opinions as to the manner in which the works were constructed and managed was the testimony as to the necessity of protection, and the physical fact that the boom gave way; this fact really being at the bottom of what occurred subsequently.

Coming now to the claim that the jam was opened as soon as possible, it may be said that this also was the opinion of the defendant's expert witnesses.  But this opinion seems to have been based upon the assertion of the witnesses that, if the jam had been opened earlier, they did not know where the logs would have gone to, and that they did not believe that people of Little Falls would have allowed its opening.  To overcome the prima facie case of negligence in defendant's management of its works made by plaintiff, when he showed that, by means of a log jam at Belle Prairie boom, his land had been inundated to the depth of eight feet for at least

three months, more than expert opinions based upon such assertions or reasons was necessary.

Referring to the claim that the conditions at the time were unprecedented, and could not reasonably have been anticipated, and therefore the defendant should not be held liable, we are of the opinion that this was not clearly made to appear. It is true that the conditions, taken altogether, were unusual; but defendant was bound to anticipate an unusual stage of water, or that the ice might go out earlier, or that a greater number of logs might float down into its booms than its previous two or three years' experience might have indicated. The evidence was not conclusive that the flooding of plaintiff's land was due to unusual and extraordinary conditions and circumstances, over which defendant had no control, and could not meet in the exercise of ordinary care and prudence.

We have not referred to the contention of plaintiff's counsel that, under its charter, defendant corporation acquired no right to stop logs destined for points below its own territory, and also that it is expressly prohibited by law from detaining logs so as to form log jams (section 2633, supra). Under the charge of the court, the plaintiff taking no exception, the question is not before us. But, in view of the fact that defendant is organized for the purpose of driving, holding and handling logs, a statute would have to be quite plain to justify any court in holding as contended for by plaintiff's counsel.

Order affirmed.