[No. 24396.   Department Two.   August 3, 1933.]

E. W. POLLOCK *et al., Respondents,* v. IVES THEATRES, INC., *Appellant.*[1]

*Roberts, Skeel & Holman, W. E. Evenson,* and *R. V. Welts,* for appellant.

*Hyland, Elvidge & Alvord,* for respondents.

TOLMAN, J.—This is an appeal from a judgment for rental due and damages accruing from the breach of the terms of a written lease of improved real property, directing the foreclosure of a chattel mortgage given to secure the performance of the terms of the lease,

[1]Reported in 24 P. (2d) 396.

and making awards for receivership expenses, attorney's fees and costs.

Since the judgment was entered below, a receiver has been appointed for the appellant, Ives Theatres, Inc., and duly authorized to prosecute this appeal.

Respondents, as owners of the property and lessors, executed the original lease in 1925 to one Halberg for a term of fifteen years. In 1927, Halberg assigned his interest to one Ives, who personally covenanted to perform the terms and conditions of the lease. Various modifications of the lease were made, some written and some oral, but there seems to be no dispute concerning the terms or effect of any of them.

In June, 1930, by a written agreement between respondents as first parties, W. B. Ives as second party and the appellant corporation as third party, after a full recital making the purpose clear, it was expressly covenanted that respondents thereby consented to assignment of the lease by Ives to the appellant corporation; that Ives was released from all liability under the lease; that the appellant assumed and agreed to perform all of the terms and conditions of the original lease as modified; and contemporaneously therewith it executed a chattel mortgage to respondents covering all furnishings, furniture, machinery and equipment in the leased building, "as security for the rent and faithful performance of the terms of said lease and supplemental agreements hereinabove referred to."

The chattel mortgage was executed and delivered accordingly and duly filed for record. It contains the following provision:

"As security for the payment of the rent and the full and faithful performance of the obligations of the lessee contained in a lease of said Lincoln Theatre dated October 16th, 1925, made by Alice D. Pollock and E. W. Pollock, wife and husband, and Edith De-

catur, a spinster, as lessors, to Edwin A. Halberg, as lessee, and in certain supplemental agreements pertaining to said lease, which said lease has been assigned to and assumed by mortgagor herein.''

Appellant entered into possession under the assignment of the lease from Ives, and under the conditions and covenants just recited.

On March 22, 1932, there was due from the appellant to the respondents, under the terms of the lease and these agreements, two months rent totalling $850, heating charges of $400, and for water service $32.80, or a grand total of $1,282.80. On that day, in accordance with the modified terms of the lease, respondents prepared and served upon the appellant a notice in the alternative to pay the amounts indicated or surrender the premises. The particular language contained in the notice which is of importance here is:

''This is to notify you that in the event that you do not comply with this notice and make the aforesaid payments or surrender said premises within thirty days from and after the date of the service of this notice upon you, that you will be guilty of unlawful detainer and the lessors will oust you from said premises and seek recovery of the rent doubled, and damages.

''This is to notify you further that in the event you do not make the aforesaid payments within thirty days from and after the date of this service upon you, that the lessors will elect and do by this notice elect to declare the lease breached, in default and forfeited, and will bring suit against you for the breach and for damages, and will foreclose such security as is provided to them under and by virtue of that chattel mortgage made and entered into on the 20th day of June, 1930.''

On April 15, 1932, appellant made its only response to that notice in the form of a letter addressed to the respondents, which reads:

"E. W. Pollock          Mt. Vernon, Washington,
"Alice D. Pollock                April 15, 1932.
"Edith Decatur
"Elden D. Pollock

"We have your 'Notice to Pay Rent or Quit and Suffer Cancellation' dated March 22, 1932, respecting the LINCOLN THEATRE in Mt. Vernon, Washington. In this notice you declare your election to declare the lease therein described forfeited, cancelled and terminated pursuant to provisions of the lease relating to forfeiture.

"This is to notify you and each of you that the undersigned accepts the cancellation of the lease in question and the same may now be regarded as terminated and at an end for all purposes. In view of your notice we have now made other arrangements for our business. This will further notify you that on April 21, 1932, we will move from the premises all our personal property and equipment and deliver the keys to you. Please arrange to have a representative present at the premises on April 21, 1932, at 10 A. M. to whom we can deliver possession of the property. We may not have all our property moved by that time but we will be able to turn the premises over to you and get our property out within the time limited in your notice.                Yours truly,

"IVES THEATRES, INC.
"formerly Fox-Ives THEATRES, INC.,
"By Waldole Ives
"Sec-Treas."

Thereafter, respondents promptly brought this action for the recovery of the sum due as specified in the notice, for damages for a breach of the lease, for a foreclosure of the chattel mortgage, and for the appointment of a receiver to hold the mortgaged property intact pending foreclosure.

Upon a showing of a sufficient emergency, a temporary receiver was appointed, who took such possession of the mortgaged property as was necessary to prevent any part from being removed from the leased

building, but appellant was permitted to and did use all of the property in the usual way until April 22, 1932, when it turned over the keys, which were accepted without prejudice, and gave up possession of the premises and the mortgaged property.

After a trial on the merits, the trial court found fully upon all the matters already suggested herein, and further found that the appellant was insolvent, that the mortgaged property in place in the theatre building was worth not more than $12,500, and that, if removed, its value would at once decrease by substantially one-third, and that appellant would have removed it except as prevented by the appointment of a receiver. Further, the court found:

"That the defendant did deliver the keys to the premises to the plaintiffs on the 22nd day of April, 1932, and did thereupon quit and abandon said premises, but the plaintiffs did accept the said keys without prejudice to the claim and suit of the plaintiffs against the defendant for the damages for the breach of the lease and the plaintiffs did at all times indicate to the defendant that they intended to hold the defendant in damages for its breach of the lease and the delivery of the keys and the premises was not a surrender of the term on the part of the defendant but a delivery of the keys and possession of the premises, and an acceptance thereof by the plaintiffs with the intention of holding the defendant in damages for its breach, and plaintiffs did re-enter said premises with notice to defendant that it would be held for damages resulting to plaintiffs from defendant's default and breach.

"That in April, 1932, the amount of rent reserved by the lease as supplemented and modified to the end of the term was $44,831.00; that the actual fair rental value of the property in April, 1932, for the balance of the term, measured by the limitations of the lease was $32,700; that the consequential damages suffered and sustained by plaintiffs by reason of defendant's

breach in April 1932 is the difference between the two, or $12,131.''

Except for some minor matters relating in a large part to rulings upon the admission of evidence, which we find not well taken, appellant advances here two major questions only: (1) That the lease was terminated at the end of the period fixed in the notice to pay or surrender, and that it was error to hold appellant for damages for the breach of the lease; (2) that the taking of appellant's personal property through a receiver and the subsequent use of it by respondents was a conversion which entitles it to recover from the respondents the value of the property so converted.

Upon the first question, appellant vigorously contends that the respondents, as lessors, have terminated and ended the leasehold term; have forfeited the lease and have repossessed the premises for their own sole use and enjoyment; and since the lease, by its terms, gives to them no rights continuing after forfeiture save only to sue for damages done to the premises by the tenant while in possession, they may recover the rent then due, but nothing more by way of damages for the breach. To make clear and certain its position, which we have just attempted to state, appellant in its brief says:

"Had they [respondents] not elected to forfeit the lease or terminate the term and take the premises for their own enjoyment during the balance of the period, the right to bring an action for future rentals or for damages in loss of rentals under the lease would have been preserved. They did not make that election and are bound under the theory upon which they did proceed."

The general rule upon which appellants base their argument is well stated in *Galbraith v. Wood,* 124

Minn. 210, 144 N. W. 945, Ann. Cas. 1915B, 609, 50 L. R. A. (N. S.) 1034, from which we quote:

. "It is the law that, upon the assertion of a forfeiture by the landlord, he is still entitled to rent which had previously become due, but not entitled to recover rent subsequently to become due. Indeed, such a forfeiture terminates the relation of landlord and tenant, and no rent can subsequently become due. 1 Tiffany, Landlord & Tenant, 1174; 18 Am. & Eng. Enc. 392; 24 Cyc. 1359; *Stees v. Kranz,* 32 Minn. 313, 20 N. W. 241. This is clearly the settled doctrine where there is no express stipulation in the lease giving the landlord the right to recover the rent for the balance of the term. Where there is such a stipulation, the tendency of the decisions is to hold it valid, and to continue the liability of the tenant in spite of the termination of the lease. Such liability is for any deficiency in the amount of rent obtained on a lease to another. 1 Tiffany, 1175 et seq., and cases cited. This is not strictly a liability for rent, but a contractual liability based upon the agreement in the case."

So it is clear that the question here is whether or not, by notice to pay or surrender and by the acts subsequently done under and in pursuance thereto, as a matter of law a complete and unconditional forfeiture was effected, or merely that the breach was thereby conclusively established, the right to continue possession terminated by that breach, and the respondents left free to sue, not for subsequently accruing rent, but only for damages for the breach, as is the right of the injured party generally in all cases where damages naturally flow from a breach of a contract. To clear the situation, it may be well to say now that the lease by its terms provides that, on default in payment of rent or in any of the covenants of the lease,

". . . parties of the first part may, at their election declare this lease at an end and recover pos-

session of said premises as if the same were held by forcible detainer.''

Practically the same language appears a second time in the lease, followed by the provision, ''and to sue for any amount due thereon, and also for any damages to the said premises by the party of the second part herein.''

It will be observed that these provisions are made optional, and nowhere in the lease is it provided that, on default, the lessors must forfeit. There was here no covenant in the lease to pay the rentals to the end of the term notwithstanding re-entry, as was the fact in the lease discussed in *Metropolitan National Bank v. Hutchinson Realty Co.*, 157 Wash. 522, 289 Pac. 56. Nor did the lease contain any direct covenant to pay damages arising from a breach.

But, in this state at least, there is a distinct and vital difference between an unqualified surrender or forfeiture of a lease for all purposes and a mere termination of possession under the lease for breach of conditions, followed by a re-entry. In cases of unqualified forfeiture, all liability is at once at an end, but a lease in no sense differs from other contracts, in that one may claim a breach when a breach occurs and hold the defaulting party for damages arising from his failure to perform if the intention and election so to do be clearly manifested, even though the contract in itself does not specifically so provide.

It is true that, in the notice, as hereinbefore quoted, the word ''forfeited'' is used, but other words are used in connection therewith, and it is immediately followed by the words ''and will bring suit against you for the breach and for damages''; thus indicating a clear intent to hold appellant for damages for the breach. Nothing thereafter done was inconsistent with

that intent, as is clearly indicated by the findings of the trial court which we have set out.

The case of *Brown v. Hayes,* 92 Wash. 300, 159 Pac. 89, is controlling here. The syllabus of that case reads:

"A landlord may treat the lease as terminated by the tenants' breach and abandonment, and may re-enter and sue for damages; and the giving of a notice to surrender or pay rent under the unlawful detainer statute is not a waiver of damages where, on the tenant's moving out, the landlord gave notice that he would recover possession and rent for what he could obtain and hold the lessees for the difference, and on accepting the key in response to notice to surrender, he refused to accept the lease as a surrender, and gave notice of intent to hold the lessees for damages."

On the facts, the two cases cannot be distinguished. The whole opinion in the *Brown* case may be read as though quoted *in extenso* as a part of our present decision.

That being the law, the trial court did not err in allowing damages for the breach, and the correct rule was followed in determining the amount of the damages.

The second question needs little discussion. The chattel mortgage, by its terms, was given to secure the payment of the rent and the performance of all of the conditions of the lease, which conditions included all monthly payments for the whole term. By failure to pay and by abandonment on the part of the tenant, a loss occurred, as found by the trial court, and the security must respond to the extent of that loss.

In any event, there could be no conversion here. Admittedly, rent was due at the time this action was started, therefore the mortgage was in default and subject to foreclosure, and we know of no rule of law

which would require the mortgagee to remove the property from the abandoned building in which it was installed, thus destroying its value in a substantial part, in order merely to foreclose the mortgage. If there was any use of the mortgaged property by the respondents during the foreclosure period, there should have been some proof of the value of such use before allowance could be made therefor.

Finding no error, the judgment is affirmed.

BEALS, C. J., STEINERT, MAIN, and BLAKE, JJ., concur.