[No. 32468.   Department Two.   December 18, 1953.]

HENRIETTE C. HEUSS, *Appellant,* v. HARRY W. OLSON *et al.,*
*Respondents.*[1]

*Lewis A. Bell,* for appellant.

*James Tynan,* for respondents.

[1]Reported in 264 P. (2d) 875.

HAMLEY, J.—This is an action by a lessor against her lessees to recover damages by reason of the asserted abandonment of the lease by lessees and failure of the latter to clean up the premises upon such termination of the lease.

The lease covers the period from January 1, 1951, to March 31, 1958. The rental was one hundred dollars a month, due and payable on the first day of each month, except that the rent for the final year, in the sum of twelve hundred dollars, was paid in advance. A sawmill and other structures on the premises were recognized in the lease as the personal property of lessees.

Among the additional provisions of the lease are the following:

"3. . . . In the event of a forefeiture, cancellation or termination of this lease for any cause whatsoever prior to the expiration of the normal term thereof, or in the violation of the terms or conditions of this lease, the Lessor may keep the said Twelve Hundred Dollars ($1200.00) or any remaining portion thereof, as damages, and may, in addition, pursue any and all other legal remedies allowed her by law."

"10. . . . It is understood and agreed that within thirty (30) days after the termination of this lease, the Lessee shall remove any and all personal property or improvements from the said leased premises, and shall in addition thereto clean all rubbish, refuse and debris from said premises, and in the event of the failure of the Lessee to so remove said personal property or so clean said premises, the title to all personal property then remaining in, on or about said leased premises shall immediately pass to the Lessor and the Lessee shall further and in addition pay unto the Lessor any damages sustained by her by reason of Lessee's failure to so remove all of said personal property and clean said premises in the manner herein provided."

"11. If the Lessee shall violate or fail to perform any of its covenants and conditions herein, including the payment of any rent when due, then the Lessor, may at her option terminate this lease by mailing notice of her intention so to do to the Lessee at his address hereinbelow set forth, or by posting notice on the premises hereby leased of her intention so to terminate and forfeit this lease. If and in the event the Lessee shall fail to cure said breach so complained of within ten (10) days from the date of giv-

ing such notice, then this lease shall be considered terminated."

In September, 1951, a fire destroyed most of the mill, and it was not rebuilt. Lessees removed the property not burned and cleaned up part of the debris. All removal and cleanup work ended in April or May, 1952. Lessees paid the rent to and including April, 1952. The May rent was not paid, and, on May 21, 1952, lessees were given a written "Notice of Termination of Tenancy."

This notice referred to paragraph 11 of the lease, quoted above, and called attention to the fact that the May rent had not been paid. The notice further advised lessees that if they failed to pay the rent within ten days from the receipt of the notice, "then this lease shall be considered terminated; otherwise, if said breach be remedied, then to remain in full force and effect."

When lessees did not respond to this notice, lessor called one of lessees to inquire what they were going to do about the lease. Lessees did not indicate their intentions in this regard. They did, however, offer to purchase the land. The offer was not accepted. Forty days after service of the notice of termination, lessees having neither resumed possession nor made any rent payment, lessor re-entered and took possession of the premises. Lessor then began this action to recover damages as follows: May, 1952, rent—$100; damages for breach of the covenant to clean up the premises—$1,250; and damages for the breach of the covenant to pay rent—$5,900.

A jury trial was had, and, at the conclusion of plaintiff's case, defendants challenged the sufficiency of the evidence and moved for dismissal. The trial court orally denied the motion as to the claimed damages for failure to clean up the premises, and as to the one hundred dollars rent for May, 1952. However, the court granted defendants' separate motion to withdraw from the jury the question of damages by reason of loss of future rents.

The total amount prayed for in connection with the two items which the court left in the case was $1,350, against

which it was conceded that the $1,200 rent paid in advance should be offset. The court therefore indicated that the case would be submitted to the jury with a maximum possible verdict of $150 for plaintiff. Defendants then consented to a judgment against themselves in that amount. The jury was thereupon dismissed, and judgment was entered for plaintiff in the sum of $150. Plaintiff appeals.

Appellant contends that the trial court erred in refusing to permit an amendment of the complaint to increase the item of damages for failure to clean up the premises from $1,250 to $5,000.

The notice of termination of tenancy was given in May, 1952. The complaint was filed on August 7, 1952. At 11:50 a. m., December 8, 1952, the day prior to the trial, there was served upon counsel for respondents a notice of intention to make a trial amendment raising the damage item as indicated. An oral motion to amend in accordance with the notice was made at the outset of the trial the next morning. Respondents objected on the grounds that the amendment was frivolous, that there was a lack of diligence on the part of appellant, and that respondents were not prepared to defend against the enlarged item of damages. Respondents further indicated that, in the event the amendment was permitted, they would ask for a continuance. The motion to amend the pleadings was denied, and when the motion was renewed during the trial and at the close thereof, the court adhered to its initial ruling.

Appellant argues that the trial amendment would have injected no new issue, and that, having prepared themselves to defend against a $1,250 claim of damages, respondents must be assumed to have been prepared to defend against a $5,000 claim based on the same asserted breach.

The assumption which appellant asks us to make is not a valid one. A requested fourfold increase in a claim of this kind gives a warning signal that those who assert it have determined to make a fuller presentation, and perhaps on a different theory, than would reasonably be indicated by the more modest claim. Thus, one who feels that there

has been adequate preparation against a $1,250 claim, or who does not plan to seriously contest such claim, might justifiably request additional time for preparation against the larger claim.

Such request was made here. If granted, it would have required the discharge of a jury already impaneled and the continuance of the trial. Appellant permitted four months to elapse between the filing of the complaint and the giving of the notice of amendment on the eve of the trial. No excuse was offered for this apparent lack of diligence.

■ The trial court's refusal to permit a trial amendment will not be overturned except for manifest abuse of discretion. *Hendricks v. Hendricks,* 35 Wn. (2d) 139, 211 P. (2d) 715. We are unable to say that the trial court here abused its discretion in refusing to permit the amendment.

Appellant also contends that the trial court erred in holding, as a matter of law, that lessor had exercised her right to forfeit the lease, thereby precluding recovery of damages for abandonment.

■ Where there has been an unqualified surrender or forfeiture of the lease for all purposes, all liability not already accrued is at once at an end. *Rockwell v. Eiler's Music House,* 67 Wash. 478, 122 Pac. 12; *Pollock v. Ives Theatres,* 174 Wash. 65, 24 P. (2d) 396; *Kelley v. Von Herberg,* 184 Wash. 165, 50 P. (2d) 23.

It is only when the forfeiture or surrender is qualified, as in the case of a lease which expressly saves the lessor's right to also recover damages based on unaccrued rent (*Metropolitan Nat. Bank v. Hutchinson Realty Co.,* 157 Wash. 522, 289 Pac. 56), or where the notice of forfeiture communicates to the lessee the lessor's intention to hold the lessee for such damages, notwithstanding the forfeiture (*Brown v. Hayes,* 92 Wash. 300, 159 Pac. 89; *Pollock v. Ives Theatres, supra*), that the lessee is not released from liability therefor.

■ In the case before us, the court correctly decided, as a matter of law, that there had been an unqualified forfeiture. Paragraph No. 11 of the lease, quoted above, clearly

gives the lessor the right to forfeit the lease for nonpayment of rent. The notice of termination indicates on its face that it was given in exercise of that right. Neither the lease nor the notice of termination of tenancy reserved lessor's right to recover damages from lessees in the event such a forfeiture was declared.

Appellant calls attention to several circumstances which she believes presented a jury question as to whether this was an unqualified forfeiture, or whether it was an abandonment of the leasehold by lessees. In this connection, she calls attention to the rule that, when a lessee abandons the premises without just cause and refuses to pay rent, the lessor may either treat the term as still subsisting and sue for the installments of rent reserved as they accrue, or, treating the lease as terminated by the lessee's breach, re-enter and sue for damages for the breach. *Brown v. Hayes, supra.*

Among the circumstances relied upon by appellant are the facts that lessees left the premises and discontinued paying rent before the notice was given; that, after the notice was served, lessor asked one of the lessees what they were going to do about the lease; that lessees then offered to purchase the tract; and that the notice gave lessees the opportunity to reinstate themselves under the lease by paying the rent for May, 1952, within ten days.

We do not believe that any of these circumstances have materiality with regard to whether there was an unqualified forfeiture by lessor. The notice speaks for itself, and plainly invokes the forfeiture provision of the lease. Lessees had the right to choose between the alternatives which that notice accorded them, namely, curing the breach by paying the May, 1952, rent, or suffering an outright forfeiture. They chose the second course. They are now entitled to rely upon the legal effect of that alternative—release from liability for damages based on nonpayment of rents which had not then accrued.

The judgment is affirmed.

GRADY, C. J., SCHWELLENBACH, DONWORTH, and FINLEY, JJ., concur.