Frances E. HOARE, Surviving Widow of
Joseph A. Hoare, Deceased,
Appellant,

v.

UNITED STATES of America,
Appellee.

No. 17162.

United States Court of Appeals
Ninth Circuit.

Sept. 21, 1961.

Kenneth S. Treadwell, of Miracle, Treadwell & Pruzan, Seattle, Wash., for appellant.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, I. Henry Kutz, Fred E. Youngman and C. Guy Tadlock, Attys., Dept. of Justice, Washington, D. C., Charles P. Moriarty, U. S. Atty., and Joseph C. McKinnon, Asst. U. S. Atty., Seattle, Wash., for appellee.

Before CHAMBERS, HAMLEY and HAMLIN, Circuit Judges.

HAMLEY, Circuit Judge.

The question here presented is whether under the circumstances of this case a government tax lien has priority over a chattel mortgage given by the tax debtors as security for the performance of a lease.

The referee in bankruptcy held that the tax lien had priority. The district court confirmed that determination. The surviving widow representing the lessors-mortgagees has appealed. For the reasons indicated below we hold that the chattel mortgagees had priority with respect to rent due and other arrearages prior to the time notice was given of the tax lien.

On October 16, 1957, Joseph A. Hoare and his wife leased the ground floor of a

business building in Port Angeles, Washington, to Alfred P. Conrad and wife. The term of the lease was five years, and the lessors, fulfilling an obligation assumed under the lease, expended $29,496.62 in remodeling the premises for use as a restaurant and cocktail lounge.

The rental was fixed at $660 a month, the lease providing for an increased rental in any month that six per cent of gross monthly sales should exceed that figure. Only that part of the $660 monthly rent which equaled six per cent of gross sales for the month was required to be paid at the end of the month. If at the end of any month the sum thus immediately due did not equal $660, the balance of the rent for that month was payable at any time within six months.

It was further provided in the lease that in the event of the lessees' failure to perform any term, covenant or condition of the lease the lessors should state the breach in writing to the lessees. The lessees were then given thirty days within which to fully perform, upon failing which "this lease forthwith shall be cancelled. * * *"

As required by other provisions of the lease, the Conrads on October 31, 1957, made, executed and delivered to the lessors a demand promissory note in the amount of $15,000 and a chattel mortgage on the lessees' property located on the premises. The note was given "as security for the performance" of the lease. The note was "without interest" but contained the provision that "if not paid when due" it would bear interest at six per cent. The mortgage was given "as security for the payment" of the note and "as security for the performance" of the lease.

In both the note and mortgage it was recited that in the event the makers fully performed the lease during the first three years of its term the note and mortgage would be canceled and satisfied. Both instruments provided for foreclosure of the mortgage in the event of failure to perform any term, covenant or condition of the lease. In the note it was stated that from the proceeds of a fore-

closure sale the whole amount of the note together with attorney's fees were to be paid. In the mortgage it was recited that the sum owing by virtue of the note and mortgage should be "the agreed and liquidated damages owing the payees for said breach."

The Conrads entered into possession on December 21, 1957. They paid no rent until April 1958. They thereafter paid various monthly amounts ranging from $100 to $750, the last payment having been made on October 6, 1958. The Director of Internal Revenue took possession of the leasehold on October 14, 1958, by a proper levy for unpaid taxes in the amount of $5,993.85. The Conrads were accordingly forced to close their business on that date. On November 13, 1958, the lessors served upon the Conrads a formal cancellation of the lease. The lease provided for cancellation in the event the lessees became insolvent.

Four days later the Conrads filed a voluntary petition in bankruptcy. Pursuant to a stipulation entered into between the trustee and all lien claimants, the trustee in bankruptcy sold all of the assets of the bankrupt's business known as Conrad's Cafe, and after payment of expenses of sale and of administration had $7,500 on hand for distribution to lien claimants.

Proceedings were then had before the referee in bankruptcy to establish the rank and priority of payment of various claims. The referee found that at the time the lease was canceled the bankrupt was delinquent on rent payments in the sum of $3,800, and had permitted utility bills and labor liens to accrue in the amount of $616.56. The Government's net tax claim was found to be in the amount of $5,775.58, with an additional $776.86 for costs and expenses of levy. It was found that the lessors had re-leased the premises on June 6, 1959, for a monthly rental of $350 and that the lessors' total loss due to the Conrads' nonpayment of rent and subsequent cancellation of the Conrad lease was $11,000.

The referee determined that the claim for the $776.86 expended by the Director

of Internal Revenue in enforcing the tax lien had first priority of payment. Second priority was given to a claim in the sum of $743.72 secured by a chattel mortgage held by a hotel supply company. Third priority was given to the tax lien in the sum of $5,775.58. Joseph A. Hoare was given fourth priority "in payment of the lien of his chattel mortgage in the amount of not to exceed $11,000."

The lessors petitioned the district court for a review of the referee's determination in so far as it gave the tax lien priority over their chattel mortgage. The court adopted and confirmed the referee's determination, and this appeal followed.

The lien of the United States for unpaid taxes arose under section 6321 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 6321. As therein provided, the lien was "upon all property and rights to property, whether real or personal," belonging to Conrad. The lien arose at the time the assessment was made (§ 6322 of 1954 Code, 26 U.S.C.A. § 6322) which was after the filing of the chattel mortgage here in question. It is provided in section 6323(a) of the 1954 Code, 26 U.S.C.A. § 6323(a), that, with exceptions not here relevant, the lien imposed by section 6321 shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed as therein provided.

The lessors asserted that by reason of their chattel mortgage they were mortgagees within the meaning of section 6323(a) and that the tax lien was therefore invalid as to them. The district court, however, confirming the determination of the referee, held that the lessors' lien under their chattel mortgage was neither perfected nor specific as to the obligation to pay the note and mortgage or the amount owing at the time of the assessment and levy, and that section 6323(a) was therefore inapplicable.

It is not indicated in the record whether a notice of lien was filed in the manner provided by section 6323(a) or if so, when. We will therefore assume that section 60.68.010 of the Revised Code of Washington, providing for the filing of notice of federal tax liens in the office of the county auditor of the county in which the property subject to the lien is situated, was complied with at least as of the date of levy.

■ The instrument relied upon is labeled a chattel mortgage and was executed and filed in the manner required for chattel mortgages in the state of Washington. Chattel mortgages to secure the performance of the obligations of a lessee under a lease are valid in Washington. Pollock v. Ives Theatres, Inc., 174 Wash. 65, 24 P.2d 396.

■ What is meant by the word "mortgagee" as used in section 6323(a), however, is a federal question, as to which state law is to be considered but is not controlling.[1] With regard to categories of interests set out in section 6323(a) it has been held that Congress used the terms in their usual and conventional sense.[2] The question then is whether the lessors are, by reason of the

1. See United States v. Gilbert Associates, 345 U.S. 361, 363, 73 S.Ct. 701, 97 L.Ed. 1071; United States v. Acri, 348 U.S. 211, 213, 75 S.Ct. 239, 99 L.Ed. 264. To be distinguished is the question of whether and to what extent the taxpayer has property or rights to property to which a tax lien could attach, as to which question state law controls. Aquelino v. United States, 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365; United States v. Durham Lumber Co., 363 U.S. 522, 80 S.Ct. 1282, 4 L.Ed.2d 1371. No such question is presented here, since lessors do not contend that their chattel mortgage divested the lessees of a property

interest in the mortgaged property upon which the Government could levy. Nor would such a contention have substance under Washington law. Glaspey v. Prelusky, 36 Wash.2d 592, 219 P.2d 535, 588.

2. United States v. Scovil, 348 U.S. 218, 221, 75 S.Ct. 244, 99 L.Ed. 271, "purchaser"; United States v. Gilbert Associates, Inc., 345 U.S. 361, 364, 73 S.Ct. 701, 97 L.Ed. 1071, "judgment creditor." Regarding what constitutes a mortgagee within the meaning of 26 U.S.C.A. § 6323, see United States v. Gargill, 1 Cir., 218 F.2d 556, 560–561.

chattel mortgage which has been described, "mortgagees" in the usual and conventional sense.

In so far as the mortgage was given to secure the payment of $15,000 as liquidated damages in the event of a breach of the lease, the lessors were not mortgagees in the usual and conventional sense. The foreclosure contemplated by the customary mortgage is intended to effectuate a return of value given by the mortgagee and nothing more.

But the mortgage was given not only to secure payment of the note but also as security for the performance of the lease. If with respect to performance of the lease, at the time of the tax levy, the lessors occupied a position substantially equivalent to that of mortgagees under a conventional mortgage, their claim is to that extent protected against the section 6321 lien under section 6323(a).

It is true that the mortgage provides that in the event of foreclosure payment shall be made from the proceeds of the sale of the whole amount specified in the note. But if the provisions of the mortgage concerning the obligation assumed and the occasioning of a breach are, as we have concluded, compatible with the generally accepted notion of a mortgage, the fact that an unorthodox measure of recovery is specified does not require total rejection of the instrument as a mortgage to which the provisions of section 6323 (a) apply. In this event it comports with the spirit of the statute to afford section 6323(a) protection consistent with the measure of security which an ordinary mortgage affords, if doing so effectuates the underlying purpose of the parties.

In our view, with regard to arrearages actually existing at the time of the tax levy, the lessors occupied a position which

may be fairly likened to that of the mortgagee under an open-end mortgage on which advances were made prior to the notice of the tax lien. As each month under the lease went by, the lessees' use of the premises represented in effect the acceptance and use of value advanced by the lessors. The fact that such value was in the form of the right to occupy premises rather than in the form of cash does not seem important. Had the lessors supplied money each month, secured by an open-end mortgage, the amount owing when the tax lien attached would be protected by section 6323(a).[3] We see no reason why the same protection should not be afforded where the money value is in some form other than actual cash.

The Government argues that section 6323(a) protection is not available because the liability of the bankrupt under the note and mortgage and the corresponding right of the mortgagee to recover were wholly contingent upon some default of the mortgagors in their performance under the lease. It is pointed out in this connection that the first step taken by the mortgagees to assert their right under the mortgage and fix liability on the mortgage was the giving of notice of cancellation on November 13, 1958, which was subsequent to the tax levy.

The mortgage expressly provides that in the event the lessees shall fail to perform any term, covenant or condition of the lease during the first three years of the term "then the Mortgagees may foreclose this mortgage in the manner provided by law. * * *" There is no requirement that the lease be canceled or that any event beyond a default by the mortgagor occur before the mortgage may be foreclosed.

We have not overlooked the fact that under the terms of the lease the lessees

3. The Internal Revenue Service has itself so ruled. Rev.Rul. 56–144, 1956–1 Cum. Bull. 562, 563:

"In the case of an 'open-end mortgage' which covers future advances, it is possible that no future advances may ever be made. Therefore, until such an advance is actually made, there can be no

fixed and specific or perfected lien under Federal law as distinguished from a mere contingent lien or 'caveat of a more perfect lien to come.' Consequently, an intervening recorded Federal tax lien has priority over advances made subsequent to the date of such recording."

were entitled to thirty days in which to correct any delinquency after being given notice of a breach. It follows that the mortgage was not subject to foreclosure until such notice had been given and the thirty-day period had run without remedial performance by the mortgagors. No such notice had been given prior to the tax levy, and so the lessees had not, prior to the tax levy, been given an opportunity to repair the breach.

But as we view it, the thirty-day grace period relates to the manner of enforcing the mortgage, not its validity. The mortgagors had, to the extent of their use of the premises, already received value and were obligated to pay for it. Notice of the breach was just a step in the process of the mortgagees' enforcement of their existing right.

 With regard to any mortgage, the fact that steps have not been taken to foreclose prior to notice of a federal tax lien does not deprive the mortgagee of the benefit of section 6323(a). Evans v. Stewart, 245 Iowa 1268, 66 N.W.2d 442, 449. Indeed, the underlying promissory note may not yet be due and still section 6323(a) protection is available. This is true despite the fact that under either of these circumstances the mortgagor may, subsequent to the tax lien, pay the obligation if or when due and so avoid foreclosure.

 The Government next argues that the identity of the property subject to lien in this case was as indefinite as was the property subject to the lien in United States v. Waddill, Holland & Flinn, 323 U.S. 353, 65 S.Ct. 304, 89 L.Ed. 294, in which the Government tax lien was given priority.

Waddill did not involve section 6323 (a), but rather the priority accorded government claims against an insolvent debtor under 31 U.S.C.A. § 191. The tax lien was asserted with regard to personal property, the fixtures and equipment used in the conduct of a restaurant. The counter-lien was one asserted by a landlord by virtue of certain Virginia statutes. These statutes authorized a land-

lord to levy distress for six months' rent upon "any goods" of the lessee found on the premises.

The landlord had not asserted his lien prior to the date on which the tax lien attached. The court, holding that the property subject to the landlord's lien was not then identifiable, pointed out that until the lien was asserted it was impossible to determine what goods were subject to the lien.

In our case there is no such problem. The chattel mortgage identifies as the mortgaged property all furniture, fixtures, supplies, equipment, appliances, licenses and the trade-name of the restaurant in question, together with added and substituted parts. This identification is as precise and complete as that of the ordinary chattel mortgage. The statutory landlord's lien in Waddill could not be related to any specific property until the lien was enforced. Here the property was identified in the contract instrument.

The Government further argues that the amount of the liability was not fixed and could not be determined until the mortgagee took steps to foreclose.

The liability to pay delinquent rent arose as soon as the rent became delinquent. At the time of the tax levy the amount then owing was known to or was ascertainable by the parties. This amount was then subject to collection by foreclosure.

Under these circumstances it is immaterial that this amount had not by then been judicially determined, since the lessors are not seeking status as judgment creditors. It is immaterial that the amount due was not then known to the Government or to third parties generally. This is ordinarily the case where, for example, a mortgage is given to secure payment of an installment note. It is likewise immaterial that the lessees' liability was, by payment, subject to mitigation or elimination after the levy. This possibility exists with regard to any unforeclosed mortgage.

The Government relies upon United States v. R. F. Ball Construction Co., 355 U.S. 587, 78 S.Ct. 442, 2 L.Ed.2d 510, as requiring a holding that the mortgage before us is not protected by section 6323 (a). The encumbrance involved in Ball was not in form a mortgage, and what the Supreme Court said in its per curiam opinion may have been intended to indicate the view that the claimant was not a mortgagee within the meaning of the statute.

However that may be, neither of the assignments under consideration in Ball were given to secure an indebtedness which to any extent matured before the tax lien attached. The assignments were given to protect a bonding company with regard to the potential liability it assumed under two performance bonds. There was no failure of performance giving rise to actual liability until after the tax lien was filed. The liability for which the assignments had been given was thus contingent and unliquidated when the tax lien attached.

In the instant case liability had already arisen to the extent of the arrearages existing when the tax levy attached. The fact that the lessees might have thereafter extinguished this liability by paying the arrearages did not render such liabilities either contingent or unliquidated.

Nothing said in United States v. Christensen, 9 Cir., 269 F.2d 624, or United States v. Bond, 4 Cir., 279 F.2d 837, calls for a different conclusion than expressed above. Both of these cases involved the question of whether the protection afforded by section 6323(a) extends to property taxes assessed against mortgaged property and paid by the mortgagee after a tax lien attached. Our conclusions in favor of the mortgage, on the other hand, have been limited to the amount representing value given by the mortgagees to the mortgagors prior to the tax levy.

At the time of the termination of the lease the actual arrearages for rent and other items were $4,416.56. But the lease was not terminated until November 13, 1958, whereas the tax levy was made on October 14, 1958. The arrearages on the latter date, which we hold to be protected by section 6323(a), may have been something less than $4,416.56.

The judgment is reversed and the cause is remanded with directions to determine the actual arrearages on October 14, 1958, and to accord the lessors priority to that extent over the federal tax lien.