**UNITED STATES of America,**
Appellant,

v.

**Elta Mae CHRISTENSEN, etc., et al.,**
Appellees.

No. 16262.

United States Court of Appeals
Ninth Circuit.

Aug. 3, 1959.

Charles K. Rice, Asst. Atty. Gen., Carolyn R. Just, A. F. Prescott, Lee A. Jackson, Fred E. Youngman, Attys., Dept. of Justice, Washington, D. C., Jack D. H. Hays, U. S. Atty., Tucson, Ariz., Ralph G. Smith, Jr., Asst. U. S. Atty., Phoenix, Ariz., for appellant.

Walter K. Tweedy, Phoenix, Ariz., for appellee.

Before STEPHENS and HAMLEY, Circuit Judges, and ROSS, District Judge.

ROSS, District Judge.

■■ The Federal sovereign is not to be frustrated in the collection of its revenue by the tax-priority laws of a half a hundred different States. Once a Federal tax lien has been duly recorded, it becomes senior in right to the claims of a prior mortgagee who has paid city or state taxes subsequently to the assess-

ment of the Federal taxes and the filing of notices of liens therefor.

The ancient maxim, "The first in time is the first in right" has, in such a case, a peculiarly salutary application.

### 1. Statement Of The Case.

On December 12, 1955, the appellant filed a complaint in the United States District Court of Arizona for the collection of Federal income withholding taxes, Insurance Contributions Act taxes, Unemployment Act taxes, so-called cabaret taxes, and a coin-operated amusement and gaming device tax, together with penalties and interest, assessed against Elta Mae Wainscott Christensen (sometimes spelled in the record and briefs "Christenson") and C. W. Wainscott. The suit also sought to establish and foreclose the appellant's liens against certain real property owned by Elta Mae Christensen, hereinafter Elta Mae, for the satisfaction of such unpaid taxes. Other defendants were Leonard W. Christensen, Elta Mae's present husband; Felix Bertino, holder of a mortgage upon the real property; the State of Arizona; Maricopa County; Phoenix; certain Arizona tax officials; and Joseph P. Goldstien (sic), holder of a certificate of purchase for city taxes.

It is agreed that there are now due and owing from the appellees to the appellant Federal taxes aggregating $10,720.14. The last notices of liens covering the assessments of those taxes were filed on January 19, 1950, three days after the Commissioner of Internal Revenue made the final assessment.

On November 22, 1943, prior to the assessment of the above taxes Wainscott and Mrs. Christensen his former wife, executed their note in favor of Felix Bertino, for $4300, secured by a mortgage on the above-mentioned real property owned by Elta Mae. There was due and owing on the note the sum of $1,607.29, plus interest.

On January 3, 1956, Bertino "redeemed Certificate of Purchase No. 460 for the City of Phoenix real property taxes in the sum of $196.40, and on the same date he paid delinquent taxes due on the property in the respective amounts of $223.63 and $116.73."

Some time in 1948 Elta Mae filed with the proper officials of Arizona a designation of homestead, not here in question, designating the above-mentioned real property as her homestead.

The District Court concluded, inter alia, that the appellant is entitled to have its lien against the property in issue foreclosed, notwithstanding taxpayer Christensen's claim of homestead; that Elsie Bertino, executrix of the estate of Felix Bertino, now deceased, has a valid mortgage upon the described premises that is prior and superior to the appellant's liens for Federal taxes; and that because of the above payments of taxes due on the property in the amount of $536.72, she has a valid lien upon the property in that amount, which is prior and superior to the appellant's lien for unpaid taxes.

On July 1, 1958, judgment was entered by the District Court, in favor generally of the appellant, but holding that Elsie Bertino, executrix of the estate of Felix Bertino, deceased, was "entitled to first satisfaction from the proceeds of the foreclosure sale, in the amount of $536.72, plus interest, * * * and the amount of $1,607.29, plus interest," etc.

Notice of Appeal was filed on August 27, 1958.

On December 8, 1958, an Assistant Attorney General of the United States filed a "Statement of Point to be Relied Upon", as follows:

"The District Court erred in holding and deciding that the claim of a prior mortgage, representing amounts paid as local taxes with respect to the mortgaged property subsequent to the assessment and filing of notices of federal tax liens, is entitled to priority over such federal tax liens."

This appeal is from that part of the judgment of the District Court awarding to the mortgagee a prior and superior lien for $536.72 paid as delinquent city and county taxes on the property after

the Federal tax liens arose and were recorded.

### 2. The Appellant's Argument.

In this suit to foreclose its tax liens on property subject to a prior mortgage, the court below entered judgment for the appellant for the full amount of its claim, but in addition to giving priority to the mortgagee for the amount of his mortgage claim, with interest, the court below also gave priority to his claim for amounts paid as local taxes of the mortgagor assessed against the mortgaged property.

The local taxes assessed against the mortgaged property were the liability of the mortgagor, but were paid by the mortgagee under a provision of the mortgage agreement permitting him to make such payments and add the amounts paid, to the mortgage indebtedness. Such taxes became a lien upon the mortgaged property long after the tax liens of the United States had been recorded, and hence as liens against the mortgaged property they were inferior to the appellant's tax liens.

Since the Federal tax liens were prior and superior to the local tax liens, the mortgagee could not, upon the payment of such taxes, acquire any right to priority therefor under any theory of subrogation. His lien as a prior mortgagee, so far as the Federal tax liens were concerned, was limited to the amount of his lien as such mortgagee at the times the notices of federal tax liens were filed. The Federal tax lien is paramount to any advances made subsequently to such notice.

Since the *local* tax liens were later in time and inferior in right to the tax liens of the appellant, and since they were paid by the mortgagee after the *Federal* tax liens had been recorded, the only basis on which priority for their payment could be awarded to the mortgagee would be by the doctrine of relation back. This doctrine, however, is not applicable in Federal tax cases, and cannot be availed of to defeat the priority of a Federal lien for taxes.

### 3. The Appellee's Argument.

The mortgage is a contract between mortgagor and mortgagee as of the date of its execution. It was given to secure the mortgagee for moneys advanced in consideration of any and/or all of the rights and duties contained in the mortgage contract. The mortgage contract should not be broken down into separate parts.

The rights of the mortgagee to repayment for moneys advanced to pay delinquent taxes not paid by the mortgagor under the terms of the mortgage are inseparable from the lien of the original mortgage for repayment of principal and interest thereon.

In diversity cases, the Federal courts must now apply state law in defining state-created rights, obligations, and liabilities. Under Arizona law, the mortgagee, by paying delinquent taxes on the mortgaged property, not paid by the mortgagor, succeeded to the rights of the City and County. Under Arizona law, as well as under the terms of the mortgage agreement, the mortgagee acquired a further lien upon the mortgaged property that was paramount to all other claims against the mortgaged property, including that of the appellant. The money advanced by the mortgagee to pay the delinquent taxes that the mortgagor failed to pay, constituted a lien prior and superior to that of the appellant.

### 4. The Relative Priority Of A Federal Tax Lien Is Always A Federal Question.

The appellees' basic misconception of the instant controversy is clearly revealed at the very outset of their brief, in which they assert:

"That in diversity cases, the Federal Courts must now apply State law in *defining* State-created rights, obligations and liabilities. That under the laws of the State of Arizona, the mortgagee by paying delinquent taxes on the mortgaged property, not paid by the mortgagor, succeeded to the rights of the City and County and *that under State law* and

the terms of the mortgage agreement, the mortgagee thereby acquired a further lien upon the mortgaged property, which was paramount to all other claims against the mortgaged property, including that of the United States." (Emphasis supplied.)

■ The above passage consists of a half-truth and a half-fallacy. We unreservedly agree with the appellees' statement that "in diversity cases, the Federal Courts must now apply State law in defining State-created rights, obligations and liabilities."

So much for the half-truth. We turn now to the fallacious half of the appellees' statement: " * * * under State law * * * the mortgagee thereby acquired a further lien upon the mortgaged property, which was paramount to all other claims against the mortgaged property, including that of the United States."

In Bank of Nevada v. United States, 9 Cir., 1957, 251 F.2d 820, 824, the late Judge Lemmon, of this Court, citing and quoting many cases, said:

"The Supreme Court has repeatedly and emphatically stated that Federal tax liens and the provisions for their collection are strictly Federal and strictly statutory." [1]

■ Furthermore, the Supreme Court has unequivocally stated that the relative priority of Federal tax liens as against State liens is always a Federal question.

In United States v. Acri, 1955, 348 U.S. 211, 213, 75 S.Ct. 239, 241, 99 L.Ed. 264, Mr. Justice Minton used the following emphatic language:

"The relative priority of the lien of the United States for unpaid taxes is (citing cases) *always* a federal question to be determined *finally* by the federal courts. The state's characterization of its liens, while

good for all state purposes, does not necessarily bind this Court. (Cases cited.)" (Emphasis supplied.)

5. Payment Of State Taxes On Mortgaged Property By A Prior Mortgagee After Federal Tax Liens Are Recorded Does Not Give The Mortgagee A Lien For Such Local Taxes Superior To The Appellant's Prior Tax Liens.

We have seen that the defendant Bertino on January 3, 1956, redeemed a certificate of purchase for real property taxes and paid delinquent taxes due on the same property. That was almost exactly six years after the final notice of Federal tax assessment lien had been filed by the Collector of Internal Revenue at Phoenix.

Section 3671 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 3671, provides that "the lien shall arise at the time the assessment list was received by the collector." Section 3672 states that "Such lien shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the collector." 26 U.S.C.A. § 3672. As we have seen, in the instant case the final notice was filed by the collector on January 19, 1950.

Even more than a century and a quarter ago, the principle of "The first in time is the first in right" was believed by Chief Justice Marshall "to be universal." Rankin v. Scott, 1827, 12 Wheat. 177, 25 U.S. 177, 179, 6 L.Ed. 592. The Chief Justice expressed the doctrine thus:

" * * * a prior lien gives a prior claim, which is entitled to prior satisfaction, out of the subject it binds * * * "

Section 3670 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 3670, reads as follows:

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (in-

1. See also United States v. Security Trust & Savings Bank, 1950, 340 U.S. 47, 49, 71 S.Ct. 111, 95 L.Ed. 53; United States v. City of New Britain, 1954, 347 U.S. 81, 84, 74 S.Ct. 367, 98 L.Ed. 520; United States v. Bank of America, 265 F.2d 862, 866, decided by this Court on February 2, 1959, rehearing denied on May 1, 1959.

cluding any interest, penalty, additional amount, or addition to such tax, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

Expounding the maxim to which we have referred, with reference to the very provision with which we are here concerned—Section 3670—Mr. Justice Minton, in United States v. City of New Britain, supra, 347 U.S. at pages 85–86, 74 S.Ct. at page 370, used the following language:

> "This principle is widely accepted and applied, in the absence of legislation to the contrary. (Authorities cited.) We think that Congress had this cardinal rule in mind *when it enacted § 3670*, a schedule of priority not being set forth therein. Thus, the priority of each statutory lien contested here must depend on the time it attached to the property in question and became *choate*." (Emphasis supplied.)

In the instant case, the final lien "attached to the property in question and became choate" in January, 1950, whereas Felix Bertino, one of the original defendants, redeemed the certificate of purchase and paid the delinquent city and county taxes six years later.[2]

6. The Stern And The Bess Cases, Heavily Relied Upon By The Appellees, In Reality Do Not Support Their Position.

There has been considerable discussion in the briefs regarding two Supreme Court cases—Commissioner v. Stern, 357 U.S. 39, 78 S.Ct. 1047, 2 L.Ed.2d 1126, and United States v. Bess, 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135. Both were insurance policy cases, and at the outset obviously not in point. But there are other distinguishing features.

(a) The Stern Case.

The assets of the estate of the respondent's husband were insufficient to meet his liability for income tax deficiencies found to have been due before his death. The Commissioner proceeded under Section 311 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 311, which section is not involved in this case. The suit was against the respondent widow as the beneficiary of life insurance policies, which do not figure in the case at bar. The decedent had retained the right to change the beneficiaries and to draw down the cash surrender values. There were no findings that he had paid any of the premiums with intent to defraud his creditors.

Furthermore, there were no findings that the decedent was insolvent at any time prior to his death.

Finally and conclusively, no Federal tax lien had attached. While the opinion does not specifically so state, the absence of a Federal tax lien can be unmistakably inferred from the following statements:

I. The syllabus of the opinion so sets forth.

II. In that case, the Government, there the unsuccessful appellant, inferentially so says, 357 U.S. at page 47, 78 S.Ct. at page 1052:

> "The Government, however, argues in its brief, '*Just as in the situation where a tax lien has attached* it is held that state law may not destroy that lien, so here,'" etc. (Emphasis supplied.)

III. In the companion Bess case, the Supreme Court gives us its own gloss of the Stern case, 357 U.S. at page 53, 78 S.Ct. at page 1056:

> "We held today in the Stern case that recovery of unpaid federal income taxes from a beneficiary of insurance, *in the absence of a lien*, can be sustained only to the extent that state law imposes such liability," etc. (Emphasis supplied.)

From the foregoing, we can see that the appellee is guilty of gross error when, on page 9 of its brief, it asserts that in the Stern case the Supreme Court "cites *for the first time in any Federal lien case*, the decision of Erie R. Co. v. Tomp-

---

2. See also Bank of Nevada v. United States, supra, 251 F.2d at pages 826–827.

kins [304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188]." (Emphasis is the appellees'.)

Stern was simply *not* a "Federal lien case."

#### (b) The Bess Case.

Why the appellee quotes the Bess case is not clear. Because the controversy there did concern itself with a Federal tax lien under Section 3670 of the Internal Revenue Code of 1939, the Supreme Court affirmed the judgment of the Court of Appeals for the Third Circuit [243 F.2d 675], holding that the beneficiary of certain life insurance policies was liable for Federal income taxes to the extent of the total cash surrender value of the policies.

#### 7. Conclusion.

The Court below erred in awarding priority to the mortgagee for amounts paid as city and county taxes, over the appellant's tax liens. The judgment of the District Court is vacated, and the case is remanded to the Court below with directions to allow proper priority in the payment of the tax claims of the appellant.

Vacated and remanded, with directions.