Fuld, J. (dissenting).
By its present decision, the court Is holding that a Federal tax lien filed against a mortgagor prior to the accrual of local real estate taxes and assessments—which are superior to the mortgage debt — is not entitled to priority over those subsequently accrued local liens. I cannot agree. In my view, the conclusion reached by the majority stands opposed to controlling authority. (See United States v. New Britain, 347 U. S. 81; see, also, United States v. Bond, 279 F. 2d 837 [4th Cir.]; United States v. Christensen, 269 F. 2d 624 [9th Cir.]; Stadelman v. Hornell Woodworking Corp., 172 F. Supp. 156 [U. S. Dist. Ct., W. D. N. Y.]; United States v. Lord, 155 F. Supp. 105 [U. S. Dist. Ct., N. H.]; Union Central Life Ins. Co. v. Peters, 361 Mich. 283.) Nor may the impact of such authority be avoided by having the State, through legislative enactment or court decision, label local taxes and assessments “expenses of the sale”, that is, of the mortgage foreclosure sale following the action brought by the mortgagee (Civ. Prac. Act, § 1087).
Once it has been determined, under State law, that the taxpayer has property or rights to property, “ state law is inoperative to prevent the attachment of liens created by federal statutes in favor of the United States.” (United States v. Bess, 357 U. S. 51, 57.) Moreover, when a Federal tax lien has attached to property o'f the taxpayer, as undoubtedly it had here, State law may not destroy it. (See Commissioner v. Stern, 357 U. S. 39.) As already indicated, calling the local taxes “ expenses of the sale ” does not help the local taxing authority, for it is to substance, not form, that the courts look. Local taxes do not result from the mortgage foreclosure sale; on the contrary, they pre-exist the sale. Accordingly, the State’s characterization of them as ‘ ‘ expenses of the sale ’ ’ — appropriate though it may be for the State’s own purposes — is thoroughly unreal in our present context and completely ineffectual to affect the priority of the Federal lien. (Cf. United States v. Gilbert Associates, 345 U. S. 361.)
*45 In deciding questions concerning the relevant priorities of a Federal tax lien and other liens, it is perfectly clear that State law determines the nature and extent of the property interests of the taxpayer and that Federal law determines the priority of the competing claims themselves. (See, e.g., Aquilino v. United States, 363 U. S. 509, 515-516; United States v. Brosnan, 363 U. S. 237, 240; United States v. Bess, 357 U. S. 51, 55, supra; United States v. Acri, 348 U. S. 211, 213.) Although the court’s opinion herein does not expressly reject this proposition — as to the proper role of State and Federal law in this area-—-its decision stands squarely opposed to it. What the court has done, under State law, is to characterize the nature and extent of the Federal lien and determine its priority in competition with local liens — a function exclusively reserved to the Federal law. (See Aquilino v. United States, 363 U. S. 509, supra.) Thus, the majority describes the Government’s status in the present action as that merely of “ a creditor of the mortgagor ” and concludes that, since the Government’s position “ is based on the claimed interest of the mortgagor, [it] can have no better standing [than the mortgagor], that is, the Federal lien is also to be paid when there is a surplus [over mortgage debt plus local taxes] in which the mortgagor would have an interest” (opinion, p. 37). To employ the language of the opinion in the Brosnan case, this is not an authorized State determination of the ‘ ‘ ‘ property and rights to property ’ * * * to which a government tax lien attaches,” but rather an unauthorized State determination of ‘' matters directly affecting the nature or operation of [federal tax] liens ” (363 U. S. 237, 240).
Furthermore, giving priority to the after-accrued local taxes, as the majority is here doing, is directly contrary to the Supreme Court’s decision in United States v. New Britain (347 U. S. 81, supra). In that case, in addition to prior mortgages and a prior judgment lien, the taxpayer’s property was incumbered by a Federal tax lien and, subsequent in time to such lien, by a municipal tax lien. The Connecticut Supreme Court reasoned, as the majority does here, that, since Federal law subordinated the Federal tax lien to mortgage and judgment liens and since, under State law, these mortgage liens were subordinated to real property tax liens, the Federal tax lien had to be *46 subordinated to the local real property tax lien. (See Brown v. General Laundry Serv., 139 Conn. 363, 373.) In answer to this argument, the Supreme Court of the United States declared (347 U. S., at p. 88):
“ We do not agree. The United States is not interested in whether the State receives its taxes and water rents prior to mortgagees and judgment creditors. That is a matter of state law. But as to any funds in excess of the amount necessary to pay the mortgage and judgment creditors, Congress intended to assert the federal lien.”
Even more recently, in United States v. Brosnan (363 U. S. 237, supra), the Supreme Court, citing numerous decisions, “ rejected ” the very position taken by the majority in this case (363 U. S., at p. 241):
“ This Court has repeatedly rejected the contention that because a fee owned by a taxpayer was already encumbered by a lien which enjoyed seniority under state law, the Government’s lien necessarily attached subject to that lien.”
The rule adopted in the New Britain case as the Federal rule for resolving conflicts between a Federal tax lien and local real property tax liens is the olden one that ‘ ‘ ‘ the first in time is the first in right’” (347 U. S., at p. 85). As there pointed out, “When the debtor is insolvent, Congress has expressly given priority to the payment of indebtedness owing the United States, whether secured by liens or otherwise, by § 3466 of the Revised Statutes, 31 U. S. C. (1946 ed.) § 191. In that circumstance, where all the property of the debtor is involved, Congress has protected the federal revenues by imposing an absolute priority ’ ’. Where, however, the court continued (p. 85), “the debtor is not insolvent, Congress has failed to expressly provide for federal priority, with certain exceptions not relevant here ”. (And see Internal Revenue Code of 1939, U. S. Code, tit. 26, § 3672; Internal Revenue Code of 1954, U. S. Code, tit. 26, § 6323).[1] And, added the court, “ There is nothing *47 in the language of § 3672 to show that Congress intended antecedent federal tax liens to rank behind any but the specific categories of interests set out therein ” (p. 88), that is, mortgagees, judgment creditors, pledgees and purchasers. Accordingly, the relative priority of each lien here involved must depend upon the time [each of them] attached to the property in question and became choate ” (p. 86. See, also, United States v. Bond, 279 F. 2d 837, supra; United States v. Christensen, 269 F. 2d 624, supra).
The court seeks to distinguish New Britain from the present case on the ground that the contest there “ was between the local government and the Federal government over their respective rights in surplus funds ”, whereas here the “ facts [show] that the dispute is really between the mortgagee and creditors of the mortgagor ” (opinion, p. 36). Starting from this premise, the majority urges that, if the contest were between the Federal Government and the local taxing authorities, New Britain would control and the Government would prevail. But, since the dispute here is between the United States, as a creditor of the mortgagor, and the mortgagee, the latter must prevail, because (the argument proceeds) the Government can have no better standing than the mortgagor himself. And the court seeks to bolster this conclusion by claiming that “ the respective liens [in this case] are not comparable charges on real property ” (p. 35). In my judgment, the proffered ground for distinction is not tenable.
It is true that in New Britain the contest was between the city and the Federal Government but, as the facts disclosed and later developments made clear (see Brown v. General Laundry Serv., 19 Conn. Supp. 335), the real parties in interest were the Federal Government and private lienors of the debtor’s real estate who were entitled to priority over the Federal lien by the express terms of the Federal lien statutes. The State of Connecticut received its taxes in full at the expense of lienors whose liens were prior to those of the Federal Government. The fact that the contest in New Britain was between the city and the Federal Government and in this case between the mortgagee and the Government neither compels nor justifies a difference in result.
*48 As I have already noted, it is the majority’s assertion that the lien for local taxes must take precedence over the Government’s lien because the respective liens are not comparable charges on real property. This is its position (pp. 36-38): On the one hand, “ The local government lien is not a levy against the mortgagor, but against the land”. On the other hand, the Federal Government’s status is only that of “ a creditor of the mortgagor ’ ’, its claim merely one ‘1 based on the claimed interest of the mortgagor ”. And its lien, rather than being a lien which “ attach [es] directly to the particular parcel of real property ”, as does that of the local government, “ attach [es] to the property merely because of an unconnected indebtedness of the owner of the land ’ ’. In other words, the Federal lien is not against the land, but “ against a presumed equity in the real property held by the mortgagor.”
Having made these distinctions, the court goes on to suggest that the difference in the way these liens arise assures priority to the liens of the local taxing authorities over the lien of the Federal Government. From this and the status ascribed to the Federal lien, it is the court’s conclusion that “ the Federal Government’s claim, which is based on the claimed interest of the mortgagor, can have no better standing [than the mortgagor’s claim], that is, the Federal lien is also to be paid when there is a surplus [above the mortgage debt and expenses of sale, including local taxes] in which the mortgagor would have an interest ” (opinion, p. 37).
The fallacy of this argument, I venture, is that it mistakes the Federal law with respect to the status and incidence of the Federal interest. The Federal Government is no mere unsecured creditor of a delinquent taxpayer. It is, rather, the holder of “ a lien * * * upon all property or rights to property, whether real or personal, belonging to such person ” (Internal Revenue Code of 1954, TJ. S. Code, tit. 26, § 6321). Such a lien attaches to the real property owned by the taxpayer at the time the “ [tax] assessment is made ” (U. S. Code, tit. 26, § 6322), not to whatever equity he may have in it after a subsequent mortgage sale. In short, the Federal lien is not, as the majority insists, “ against a presumed equity in the real property held by the mortgagor ”, but against the land itself. The rights of the Federal Government to the proceeds of *49 the mortgage sale are not, therefore, limited to those of the mortgagor.
Let me state the matter somewhat differently. The lien of the United States arose when the assessments were made, and it attached to the mortgaged property at that time. Consequently, if the sale of the property had then been held, that lien could have been satisfied out of the proceeds of such sale after payment of proper expenses and of the amount then due on the mortgage plus interest to the date of payment. The local taxes here involved had not yet come into being and might never have become liens against the property. They might have been paid by the mortgagor or the property might have been foreclosed before they became due. Since, therefore, the liens of the local authorities had at best only a potential existence, we do not reach the question whether those liens were choate when the Federal liens attached. It comports neither with reality nor with law to give such “potential liens ” priority over the pre-existing matured Federal lien by labeling them “ expenses of the sale ” in foreclosure proceedings.
Indeed, an argument very similar to that made by the court here, namely, that the respective charges of the Federal Government and the local taxing authorities are ‘ ‘ not comparable charges on real property ”, was expressly made and rejected in the New Britain case (347 U. S. 81, supra). It had evidently been argued that the local tax liens should take precedence over the Federal tax lien because they were “specific” while the Federal lien was “ general ”. With respect to this contention, the Supreme Court declared (p. 84):
“ [T]he fact that one group of liens [the local] is specific and the other [the federal] general in and of itself is of no significance in these cases * * *. Thus, the general statutory liens of the United States are as binding as the specific statutory liens of the City. The City gains no priority by the fact that its liens are specific while the United States’ liens are general. ’ ’
Finally, a word must be said about the majority’s characterization of the decision in United States v. Brosnan (363 U. S. 237, supra) as “ a departure ” from the holding in the New Britain case. In the first place, Brosnan was concerned with a question *50 whether a Federal tax lien could be extinguished under a State procedure for foreclosure in which the Federal Government, a junior lienor, was not, and need not have been, a party; what was involved, therefore, was not the problem of priority at issue here. In the second place, although local taxes had been paid out of the proceeds of the mortgage sale and thus had, in effect, achieved priority, that issue was never raised on appeal, the sole issue being—to cull from the court’s opinion—“whether the federal lien was effectively extinguished by state proceedings to which the United States was not, nor was required under state law to be, a party ” (363 U. S., at pp. 238-239). The third' and (to me) conclusive reason why Brosnan may not be taken to be a departure from the New Britain holding is that in Brosnan the Supreme Court actually cited New Britain with approval (363 U. S., at p. 241, n. 4) and restated one of the principles which it had announced; thus, it wrote in Brosnan (p. 241): “ This Court has repeatedly rejected the contention that because a fee owned by a taxpayer was already encumbered by a lien which enjoys seniority under state law, the Government’s lien necessarily attached subject to that lien”. As is evident, far from supporting the majority view in the present case, the opinion in Brosnan stands -with. New Britain to refute it.
In sum, then, in situations of this kind, the lien of the Federal Government must be recognized as prior in right to that of the local taxing authorities. This follows from the fact that it is prior in time. But this does not mean that those local taxing authorities will not collect their taxes. The majority opinion has placed the contest in its proper setting. The dispute is between the mortgagee and the Federal Government as a creditor of the mortgagor. The local taxing authorities will be paid at the expense of the mortgagee so there will be no adverse economic impact upon the taxing authorities. The mortgagee’s interest in the proceeds of the mortgage sale may, perhaps, be diminished. But the mortgagee is not left without recourse where the mortgagor is liable for payment of the debt secured by the mortgage and he is not insolvent. In such a case, the mortgagee may collect the “ residue ” or balance due from the mortgagor by way of a deficiency judgment (Civ. Prac. Act, §§ 1082,1083).
I would affirm the judgment of the Appellate Division.
*51 Chief Judge Desmond and Judges Dye, Froessel and Van Voorhis concur with Judge Burke; Judge Fuld dissents in an opinion in which Judge Foster concurs.
Judgment of Appellate Division, entered June 13, 1961, reversed and judgment of the County Court, Erie County, entered October 20, 1960, reinstated, without costs.

. It is appropriate to note at this point that the record before us, like the record in New Britain (347 U. S., at p. 85), does not indicate that the mortgagor-taxpayer was insolvent.