UNITED STATES of America

v.

William S. LORD as Administrator of the Estate of Israel Goldman, Anne Goldman, City Savings Bank of Laconia, N. H., Town of Gilford, N. H., The City of Laconia, Isidor Blickman.

Civ. A. No. 1669.

United States District Court
D. New Hampshire.

May 16, 1957.

Maurice P. Bois, U. S. Atty., Concord, N. H., William Maynard, Asst. U. S. Atty., Concord, N. H., Fred Siegel, Office of Regional Counsel, U. S. Treasury Department, Boston, Mass., for plaintiff.

H. Thornton Lorimer, Concord, N. H., for City Savings Bank of Laconia, N. H.

A. Gerard O'Neill, Laconia, N. H., for the City of Laconia.

Irving S. Zinker, Brooklyn, N. Y., Sulloway, Hollis, Godfrey & Soden, James B. Godfrey, Concord, N. H., for Isidor Blickman.

CONNOR, District Judge.

This is an action initiated by the United States to determine the merits of all claims to and liens upon certain real estate and personal property situate in the Town of Gilford, and the City of Laconia, County of Belknap, New Hampshire. The defendants were properly

served either within the district under the provisions of Rule 4, Federal Rules of Civil Procedure, 28 U.S.C., or without the district under the provisions of 28 U.S.C. § 1656 (see also 26 U.S.C. § 7403(b)). All entered appearances except Anne Goldman, against whom the clerk entered default on August 7, 1956. Rule 55(a), F.R.C.P.

On June 1, 1951, the Commissioner of Internal Revenue Service made an assessment of taxes upon the income of Israel Goldman and Anne Goldman for each of the calendar years, 1943, 1944, 1945, and 1946. Notice of liens for the collection of these taxes (26 U.S.C. § 6321) against the taxpayers' real estate and personal property involved in this action was recorded at the Registry of Deeds for Belknap County on October 10, 1951, and again on January 23, 1952. The realty was then in the name of Anne Goldman as sole owner in fee simple.

The tax assessments by the United States are as follows:

### Israel Goldman and Anne Goldman

| Taxable Periods | Amounts | | Payments | Unpaid Balance |
|---|---|---|---|---|
| 1943 | Taxes | $1,571.36 | | |
| | Penalties | 78.57 | | |
| | Interest | 680.08 | $49.95 | $ 2,280.06 |
| 1944 | Taxes | 3,834.53 | | |
| | Penalties | 1,917.27 | | |
| | Interest | 1,429.49 | none | 7,181.29 |
| 1945 | Taxes | 8,907.34 | | |
| | Penalties | 4,453.67 | | |
| | Interest | 2,786.16 | none | 16,147.17 |
| | | | Total | $25,608.52 |

### Israel Goldman individually

| | | | | |
|---|---|---|---|---|
| 1946 | Taxes | $3,645.69 | | |
| | Penalties | 1,822.85 | | |
| | Interest | 921.61 | none | $ 6,390.15 |

### Anne Goldman individually

| | | | | |
|---|---|---|---|---|
| 1946 | Taxes | $3,328.08 | | |
| | Penalties | 1,664.04 | | |
| | Interest | 841.32 | none | $ 5,833.44 |

At the time the United States recorded its liens, the property was subject to a duly recorded mortgage from Anne Goldman to City Savings Bank of Laconia, one of the defendants. This mortgage was dated September 21, 1949, and secured payment of a promissory note of the same date, signed by Anne Goldman and Israel Goldman, in the amount of $24,000, payable on demand with interest at five percent. At the time the United States filed its liens, there was a balance of $21,000 due on this note.

On October 1, 1953, subsequent to the recording of the Government's liens, Anne Goldman mortgaged the premises to Sally K. Shafron. This second mortgage was later foreclosed, and on December 5, 1955, Isidor Blickman, a defendant in this case, bought in the property at the foreclosure sale, thus becoming the record title holder of the equity of redemption. On April 11, 1956, the

real property and personalty were seized by the United States under the provisions of 26 U.S.C. § 6331, and on June 19, 1956, this complaint was entered and Daniel E. Donovan, Jr., of Concord, was appointed receiver of all the property. 26 U.S.C. § 7403(d).

■■ It is conceded by the United States that the mortgage of City Savings Bank of Laconia, having been duly recorded before the recording of the tax liens, has priority over the tax liens. 26 U.S.C. § 6323. This priority, of course, extends only to proceeds gathered from the sale of the real estate, since the mortgage does not cover personal property. The bank insists, however, that in addition to the $21,000 owing on the mortgage, it also is entitled to priority on certain items, including interest, premiums on fire insurance, and expenditures on tax redemption, totaling $2,418.02.[1] These will be dealt with in the order presented. A federal lien for income taxes takes priority over claims and liens arising subsequent thereto. Knox v. Great West Life Assurance Co., 6 Cir., 212 F.2d 784; Grand Prairie State Bank v. United States, 5 Cir., 206 F.2d 217; United States v. Ridley, D.C., 127 F. Supp. 3. Whether interest due after the recording of the liens should be allowed involves legal and equitable considerations. The statutory form of mortgage secures not only the principal but also the interest. The mortgage is valid against subsequent creditors, RSA 477:7, and the term "mortgage" would seem to include interest. Its payment is as much of the contract between the mortgagee and mortgagor as the payment of the principal. The principal plus the pay-

ment of interest thereon as it accrued, evidenced by the note, was the entire obligation, and secured on the execution of the mortgage. United States v. Sampsell, 9 Cir., 153 F.2d 731, 736. It is significant that the Government may force a sale of the property and pay senior creditors, thus stopping the running of interest.

The item claimed is in the sum of $831.25 due on July 2, 1956,—a sum representing something short of one year's interest, and indicating that other interest charges had been met since the recording of the tax lien. While it was within the power of the mortgagee to foreclose and thus prevent the running of interest, it hardly can be called wilful neglect or undue delay.[2] This factor, when considered with the failure of the Government to prosecute the claim, would equitably require that this item be considered a part of the mortgage.

This item, plus such interest as accumulated to the date of the final distribution, is allowed as a priority with the mortgage debt.

■ The remaining claims of the bank are not to be entitled to like disposition but are to have priority only as to the claim of the holder of the equity of redemption. While it is true that he neither requested nor affirmatively approved the payment of the insurance premiums or the taxes, he was a tentative beneficiary of them so long, at least, as his equity was of value. The taxes would be a burden which would have to be met, and his interest to the extent that it could be established was protected in the insurance coverage.

1. The items as claimed by the bank in its requests for findings of fact and conclusions of law are as follows:

| | |
|---|---|
| Interest on mortgage to July 2, 1956 | $831.25 |
| Advance to pay fire insurance to December 30, 1955 | 535.96 |
| Interest to July 2, 1956 | 16.49 |
| Advance to pay fire insurance to January 17, 1957 | 333.20 |
| Interest to July 2, 1956 | 9.16 |
| 1954 Gilford real estate tax redemption | 689.98 |
| Interest to July 2, 1956 | 1.98 |
| | $2,418.02 |

2. The enjoining order of June 19, 1956, barred foreclosure.

■ Despite the fact that the Government's liens were recorded prior to the creation of the second mortgage under which he holds the equity of redemption, defendant Blickman asserts that they should not have priority over his claim. It is his contention that the United States knew of his purchase of the deed of foreclosure of the second mortgage, knew that he intended to and did advance sums of money to improve the premises, and encouraged him to believe that settlement of the tax claim shortly would be reached. No sufficient evidence was offered that would tend to show that the United States acted with anything but good faith, and there is no basis for ruling that the United States is estopped from asserting its claim. Nor is there any merit to Blickman's counterclaim (dismissed as to bank) and request for affirmative relief. His allegations that the Government converted his property by an illegal seizure without due process of law are not only unsubstantiated by the record but are entirely in error in the light of the statute (26 U.S.C. § 6331) and the order of this court dated June 19, 1956.

■ Another assertion made by defendant Blickman is that the United States has already agreed to compromise the tax assessment upon which the liens are based. The Government holds a sum of money totaling $3,728.85, which Blickman claims was accepted in part payment and is now held as a partial performance of the compromise agreement. The money in question is the accumulation of several deposits made by the Goldmans toward a proposed settlement. Before the Government either accepted or rejected the proposal, Anne Goldman withdrew the offer preparatory toward making another. The Government has never returned the money because during the pendency of the first offer Israel Goldman died and it has asked this court to rule as to its proper distribution. Since the money was originally deposited only toward a compromise settlement and not in part payment of the entire assessment, the United States may not apply any of it in satisfaction of the liens. There was no testimony as to who provided the funds for deposits on the compromise offer, and, in such circumstance, the court is of the view that the funds should be returned to payee or other representative.

■ Finally defendant Blickman asserts that he is at least subrogated to tax lien priority of the Town of Gilford since he purchased the premises for $656.53 on June 28, 1956, at a tax sale for 1955 taxes. Even though he received a receipt from the town's tax collector saying that he had purchased the "tax lien", he is not subrogated to the priority the Town of Gilford had held. A buyer who purchases property at a tax sale in New Hampshire (RSA 80:20) receives an estate in fee simple (Smith v. Messer, 17 N.H. 420), once all the conditions of the statute are fulfilled (RSA 80:20–80:30) and not the municipality's rights under a tax lien. See also RSA 80:42.

The Town of Gilford still has a claim amounting to $740.00 for real estate taxes assessed as of April 1, 1956, against this property. The law of the state provides that this claim constitutes a tax lien. RSA 80:19. Under ordinary circumstances, this tax lien, which does not have to be recorded, would give the town priority over the mortgagee, but would not necessarily give it priority over the Federal Government's liens. Faced with this same problem, a Connecticut state court directed that, in the distribution of the proceeds of mortgage foreclosure sales of real estate, certain municipal tax and water-rent liens should have priority over federal tax liens. This judgment was affirmed by the Supreme Court of Errors which felt that this was the logical solution to the dilemma.

"Moreover, if priority were accorded to the federal liens over those of the municipality, the result would have to be that either the rank of the municipal liens would be reduced below that of the mortgages and judgment lien, which would be in violation of the state law, or the

position of the federal liens would be moved up to a place ahead of the mortgages and judgment lien, in violation of § 3672 [now 26 U.S.C. § 6323]. It can hardly be assumed that Congress intended any such result. The only reasonable interpretation of s. 3672 is that the Congress, in enacting it, expressed the intention that federal liens should be subordinated to such mortgages and judgment liens as are described therein and, consequently, subordinated to such other incumbrances as have priority over those mortgages and judgment liens." Brown v. General Laundry Service, Inc., 139 Conn. 363, 373, 374, 94 A.2d 10, 15.

The case was appealed to the United States Supreme Court which overruled the state court's judgment.

"The United States is not interested in whether the State receives its taxes and water rents prior to mortgagees and judgment creditors. That is a matter of state law. But as to any funds in excess of the amount necessary to pay the mortgage and judgment creditors, Congress intended to assert the federal lien. There is nothing in the language of § 3672 to show that Congress intended antecedent federal tax liens to rank behind any but specific categories of interests set out therein, and the legislative history lends support to this impression." United States v. City of New Britain, 347 U.S. 81, 88, 74 S.Ct. 367, 371, 98 L.Ed. 520.

The court ruled that "priority of these statutory liens is determined by another principle of law, namely, 'the first in time is the first in right'." 347 U.S. 85, 74 S.Ct. 370.

This does not mean, however, that the Town of Gilford loses its priority over the mortgagee simply because it is inferior to the Federal Government. When the above case was returned to Connecticut, the Superior Court ruled:

"So far as state law is concerned, it is clear that with the exception of a portion of the liens of the federal government, the liens of the city must take precedence over any incumbrance on the property irrespective of the time at which that incumbrance might have attached. This means that the city may resort to the proceeds from the sale of the property which the previous supplemental judgment applied to payment of the judgment lien, and if it becomes necessary, the mortgage indebtedness." Brown v. General Laundry Service, Inc., 19 Conn.Sup. 335, 113 A.2d 601, 604.

This is in line with a decision of an Illinois state court. There, as here and in the Connecticut case, a mortgagee held a clear priority under the statute as against the United States tax lien. Local law gave the holder of a mechanic's lien priority over the mortgagee, and a dispute arose between the United States and the holder of the mechanic's lien as to which had seniority. After ruling that the Government had priority over the mechanic's lien and the mortgagee had priority over the Government, the court said:

"The mechanic's lien claimant by state law is given a lien prior to that of the mortgagee, which in effect means that it may resort to the proceeds from the sale of the property which are applicable to payment of the mortgage indebtedness. This is the inevitable result of the application of the Act of Congress and of the state law." Samms v. Chicago Title & Trust Co., 349 Ill.App. 413, 422, 111 N.E.2d 172, 176.

I am disposed to adopt this reasoning, which is reflected in the order of distribution.

▆▆▆ On the state of the record, Israel Goldman had no interest in the real estate in question when the liens were recorded. The complaint described certain personal property which has been inventoried by the receiver. It is clear that of the parties to this action, only the United States holds a valid lien and

right to levy on the personalty. Since there are creditors who rank behind the United States in the disposition of the real estate, equity would seem to require an order directing that the Government's claim be satisfied by first exhausting its lien against the personalty, thus reducing the burden on the realty to the benefit of the subordinate creditors.

I find that Anne Goldman and the Estate of Israel Goldman are indebted to the United States in the amount of $25,608.52, with interest thereon as allowed by law; that the Estate of Israel Goldman is indebted to the United States in the amount of $6,309.15, with interest thereon as allowed by law; that Anne Goldman is indebted to the United States in the amount of $5,833.44, with interest thereon as allowed by law; and that this indebtedness is secured by liens upon part of the property now under receivership of Daniel E. Donovan, Jr., by order of this court.

In order that all liens and claims be paid conformably with the within findings, the receiver is directed to forthwith sell all the right, title and interest in the real and personal property of the named defendants at public auction on the premises after due notice as required under 28 U.S.C. § 2002, and such other notice or advertisements as the receiver deems reasonably necessary.

After order directing the sale of the real estate and personalty by the receiver has been complied with, and after the receiver's fees are satisfied, the proceeds of said sale shall be distributed in the following order:

(a) to be applied to the mortgage debt of $21,000 that was outstanding on the dates the liens of the United States were recorded and held by City Savings Bank of Laconia, plus interest of $831.25 and interest at five percent on $21,000 from July 2, 1956, to date of distribution; it being understood that the Town of Gilford may appropriate $740 toward the satisfaction of a tax lien now outstanding ($740 to the Town of Gilford; $20,260 to City Savings Bank of Laconia).

(b) to be applied to the tax debt to the United States by Anne Goldman ($31,441.96 to the United States with allowable interest).

(c) to be applied to that part of the mortgage debt as was not satisfied in (a) but which was appropriated to satisfy the lien of the Town of Gilford ($740 to City Savings Bank of Laconia).

(d) to the City Savings Bank for advances to pay insurance with interest thereon.

(e) to the City Savings Bank for tax redemption, Town of Gilford 1954 tax.

(f) remainder to Isidor Blickman, holder of the equity of redemption.

The proceeds of the sale of the personal property are to be applied to the claim of the United States.