**UNITED STATES of America, Appellant,**

v.

**V. F. BOND, Audrey A. Bond, et al., Appellees.**

**No. 7987.**

United States Court of Appeals Fourth Circuit.

Argued Jan. 8, 1960.

Decided May 31, 1960.

Haynsworth, Circuit Judge, dissented.

David O. Walter, Atty., Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson and A. F. Prescott, Attys., Dept. of Justice, Washington, D. C., John M. Hollis, U. S. Atty., Norfolk, Va., and Henry St. J. FitzGerald, Asst. U. S. Atty., Alexandria, Va., on brief), for appellant.

Dillard C. Laughlin, Arlington, Va., (Jesse, Phillips, Klinge & Kendrick, Arlington, Va., on brief), for appellees.

Before SOBELOFF, Chief Judge, and HAYNSWORTH and BOREMAN, Circuit Judges.

BOREMAN, Circuit Judge.

The principal question for decision is whether a tax lien of the United States is prior in right to payments of real estate taxes made by the mortgagee under a prior recorded mortgage, the taxes having accrued and the payments having been made subsequent to the recordation of the notice of federal tax lien. In addition, there is a question of priority as between the federal tax lien and an attorney fee allowed by the District Court for payment to the mortgagee out of the proceeds of the sale of the mortgaged property.

The United States brought this action in the United States District Court for the Eastern District of Virginia on October 29, 1957, for the foreclosure of tax liens upon property and rights to property of appellees, the taxpayers.

There is no dispute as to pertinent facts. On December 20, 1955, deficiencies were assessed against the taxpayers for the years 1943 through 1947, totaling $318,832.84, and on the same day deficiencies were assessed against taxpayer, V. F. Bond, for the year 1942 in the amount of something over $18,000.00. On or about December 20, 1955, notices of such assessments were served upon the taxpayers and demand for payment was made but taxpayers refused to pay.

On December 21, 1955, notice of lien for each assessment was recorded in the proper county and municipal offices pursuant to 26 U.S.C.A. § 6323(a)(1). On July 2, 1957, the assessments had been reduced to judgment.

The complaint listed various properties owned by the taxpayers, among them being the Arlington Hotel, at Arlington, Virginia, the property and the proceeds of sale thereof involved in controversy before this court. The United States requested the appointment of a Receiver to take charge of, marshal and liquidate the properties, and prayed inter alia that the court determine the validity and priority of all liens and claims and order a foreclosure of the liens of the United States and a sale of the properties.

On November 27, 1957, the District Court found that the United States had valid liens in the principal sum of $357,484.18, plus interest, for the years involved, and that the taxpayers were insolvent. The court then appointed a Custodial Receiver to take charge of the properties of the taxpayers and appointed a Special Master to ascertain and report to the court the claims against the taxpayers, the value of their properties and the validity and priority of liens on such properties. Pursuant to the recommendations of the Receiver, the Arlington Hotel property was sold for $172,500.00.

The Arlington Hotel property was subject to a mortgage,[1] executed by taxpayers as mortgagors, securing a loan in the original principal sum of $100,000.00 made by Perpetual Building Association, hereinafter called "Perpetual". This mortgage was recorded on July 15, 1955, some six months prior to the recordation of the notice of federal tax lien. Monthly payments were made by the mortgagors until October 4, 1956, after which

---

1. The instrument was actually a deed of trust, but there is no dispute that it qualified as a "mortgage" within the meaning of 26 U.S.C.A. § 6323(a). See Fn. 4.

no further payments were received by Perpetual.

Under the mortgage each monthly payment was allocated not only to the payment of principal and interest, but a portion, $331.00, was also set aside in a fund for the payment of taxes accruing against the mortgaged property. The mortgage contained other provisions as follows: .

"*It Is Hereby Covenanted:* * * (2) that any and all taxes and assessments, general or special, now or hereafter assessed against said realty shall be paid when due, ' * * * (7) that the title to said realty and the record of said title shall be kept free of litigation, infirmity and lien, * * * .(10) that any and all disbursements made by the Treasurer [of Perpetual] because of the failure of the grantor to make any payment or do any act required to be made or done, with interest thereon at six percent (6%) per annum, shall be demandable at any time by the Treasurer and, until repaid to the Treasurer, shall be deemed to be secured by this Deed of Trust, and (11) that if there shall be any default in the performance of any of the foregoing covenants the Treasurer shall have the right and power to do any one or more of the following: (a) do any act or make any disbursement, in his name or the name of the grantor, which he may deem necessary or proper to protect the lien of this Deed of Trust, * * *."

After default by the mortgagors, Perpetual paid the local real estate taxes assessed for the years 1957 and 1958 which had accrued and had been assessed subsequent to the recordation of the notice of federal tax liens. While a portion of the payment made for 1957 taxes came from the accumulated fund paid and held

for this purpose, Perpetual paid from its own funds on August 16, 1957, $4,759.16 for the year 1957 and on August 11, 1958, $4,787.16 for the year 1958. Perpetual claims that it has a lien for those amounts, with interest, by virtue of the provisions of the mortgage, and that such lien is prior to the federal tax liens.

The District Court (United States v. Bond, 172 F.Supp. 759) held that Perpetual was entitled to be reimbursed for the real estate taxes paid by it, prior to the lien for federal taxes. In a separate unreported memorandum opinion, the court allowed an attorney fee of $1,000.-00, payable to Perpetual from the proceeds of sale as a cost of liquidating the mortgage, the attorney fee to take priority also over the federal tax liens. From these decisions United States appeals.

The United States contends that in determining priorities, where a federal tax lien is involved, the "inchoate lien test" is applied so as to defeat the competing lien if it be shown that the competing lien was uncertain and inchoate at the time of the recordation of the federal tax liens. Therefore, it is urged that since both the necessity and amount of the local real estate taxes and attorney fee were uncertain at the time the federal tax liens were recorded, both must necessarily be inferior and junior in priority to the federal tax liens. Perpetual, on the other hand, contends that 26 U.S. C.A. § 6323(a) gives priority to a prior recorded mortgage over a federal tax lien not only as to the mortgage debt but also as to the covenants and provisions contained in the mortgage and payments made by mortgagee thereunder; and that the inchoate lien test is not applicable here.

The federal tax lien was created by statute many years ago and present enactments are identified as § 6321 [2] and

**2.** 26 U.S.C.A. § 6321. Lien for taxes
"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any

costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

§ 6322 [3] of the Internal Revenue Code of 1954. For the lien to become valid and effective under these sections, notice, filing or recording are not required. Section 6322, originally Act of July 13, 1866, ch. 184, 14 Stat. 107, was considered in United States v. Snyder, 1893, 149 U.S. 210, 13 S.Ct. 846, 37 L.Ed. 705, wherein the Supreme Court of the United States held that an unrecorded tax lien was valid against a purchaser without notice thereof. This decision prompted Congress to at least partially abrogate the effect of the secret, unrecorded lien, and by Act of March 4, 1913, ch. 166, 37 Stat. 1016, the tax lien statute was supplemented by requiring *recordation* of the federal tax lien to render it valid as against mortgagees, pledgees, purchasers and judgment creditors. Under the Internal Revenue Act of 1954, this is designated § 6323(a) [4]. While § 6323(a) is not a priority statute as such, if it is to have any meaning its necessary effect is to give priority to the interests mentioned therein.

■■ 31 U.S.C.A. § 191, R.S. 3466 [5], is a statute which purports to fix priority of debts due the United States where the debtor is insolvent. While the priority of such debts mentioned in this statute would appear to be absolute, it was held in Brent v. Bank of Washington, 1836, 10 Pet. 596, 9 L.Ed. 547, that this priority in insolvency cases is not to supersede prior encumbrances, including mortgages. The court there said that it had *never* been decided that the preference given the United States would affect any lien, general or specific, existing "when the event took place which gave the United States a claim of priority." In the instant case, even though the court found insolvency of taxpayers, the United States did not present, before the District Court, any claim of priority under this insolvency priority statute and, for that reason, it is precluded from first raising the point here. 36 C.J.S. *Federal Courts* § 292(b) (1) (1943).

■ Several cases have been decided by the Supreme Court of the United States involving the application of the insolvency priority statute, 31 U.S.C.A. § 191, and while a discussion thereof may serve no real purpose here, we note them to indicate that, in insolvency cases, the Supreme Court considered and determined the question as to whether *state created* liens were so specific, perfected and choate as to be accorded priority over federal tax liens. In establishing the "choate lien test", these cases have developed exacting requirements, the substance of which is to require that the state created liens be specific to the point that nothing further need be done to make the lien enforceable. See United

3. 26 U.S.C.A. § 6322. Period of lien
"Unless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed is satisfied or becomes unenforceable by reason of lapse of time."

4. 26 U.S.C.A. § 6323. Validity against mortgagees, pledgees, purchasers, and judgment creditors
"(a) Invalidity of lien without notice.— Except as otherwise provided in subsection (c), the lien imposed by section 6321 shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the Secretary or his delegate—
"(1) Under state or territorial laws.— In the office designated by the law of the State or Territory in which the property subject to the lien is situated, when-

ever the State or Territory has by law designated an office within the State or Territory for the filing of such notice;
* * * *"

5. 31 U.S.C.A. § 191. Priority established
"Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed. R.S. § 3466."

States v. Gilbert Associates, 1953, 345 U.S. 361, 73 S.Ct. 701, 97 L.Ed. 1071; United States v. Waddill Co., 1945, 323 U.S. 353, 65 S.Ct. 304, 89 L.Ed. 294; United States v. State of Texas, 1941, 314 U.S. 480, 62 S.Ct. 350, 86 L.Ed. 356; People of State of New York v. Maclay, 1933, 288 U.S. 290, 53 S.Ct. 323, 77 L.Ed. 754.

United States v. Security Trust & Sav. Bank, 1950, 340 U.S. 47, 71 S.Ct. 111, 113, 95 L.Ed. 53, extended the application of the choate lien test to a statutory attachment lien on property in California obtained under California law. No insolvency question was presented. The court said that in cases involving federal priority under the insolvency statute, 31 U.S.C.A. § 191, R.S. § 3466,

> " * * * it has never been held sufficient to defeat the federal priority merely to show a lien effective to protect the lienor against others than the Government, but contingent upon taking subsequent steps for enforcing it. * * * *If the purpose of the federal tax lien statute to insure prompt and certain collection of taxes due the United States from tax delinquents is to be fulfilled, a similar rule must prevail here.* * * * " (Emphasis supplied.)

The court held that the federal tax lien was superior to the inchoate attachment lien. In a concurring opinion, Mr. Justice Jackson expressed the view that the statute (§ 6323(a) ) excludes from the operation of the secret lien those types of interests which are specifically set forth in the statute *and no others.*

United States v. City of New Britain, 1954, 347 U.S. 81, 74 S.Ct. 367, 368, 98 L.Ed. 520, brought before the Supreme Court the question of the "relative priority of statutory federal and municipal liens to the proceeds of a mortgage foreclosure sale of the property to which the liens attached". There, two mortgages on the real estate of a corporation located in the City of New Britain, Connecticut, were foreclosed by judgment sale. Against the fund thus created were the claims of the two mortgages, a judgment of record and various statutory liens asserted by the City and by the United States. The Connecticut state court gave priority to the City's liens, the mortgages, the judgment lien and the federal tax liens in that order. The United States appealed from the judgment insofar as the statutory liens of the City were given priority over those of the United States. The record did not disclose insolvency of taxpayer. Since the holding in that case represents an important step in the development of the law by which we find ourselves now controlled, careful analysis is warranted.

In New Britain, the federal tax liens, resulting from unpaid withholding and unemployment taxes and insurance contributions, arose on various dates between April 1948 and September 1950. The City's liens, which attached to the specific real estate sold, were for delinquent real estate taxes and water rents which became due and which attached on various dates between 1947 and 1951. Certain of the City's liens were specific and became choate prior to the attachment of some of the federal tax liens. At 347 U.S. at pages 84 and 85, 74 S.Ct. at pages 369–370 (we omit footnote references), the court said:

> " * * * However, we accept the holding as to the specificity of the City's liens since they attached to specific pieces of real property for the taxes assessed and water rent due. The liens may also be perfected in the sense that there is nothing more to be done to have a choate lien—when the identity of the lienor, the property subject to the lien, and the amount of the lien are established. The federal tax liens are general and, in the sense above indicated, perfected. But the fact that one group of liens is specific and the other general in and of itself is of no significance in these cases involving statutory liens on real estate only. * * *
>
> "Thus, the general statutory liens of the United States are as binding

as the specific statutory liens of the City. The City gains no priority by the fact that its liens are specific while the United States' liens are general. Obviously, the State cannot on behalf of the City impair the standing of the federal liens, without the consent of Congress. [Cases cited.] On the other hand, the federal statutes do not attempt to give priority in all cases to liens created under the paramount authority of the United States. The statute creating the federal liens here involved, I.R.C., § 3670, [now 26 U.S.C.A. § 6321] does not in terms confer priority upon them.

"When the debtor is insolvent, Congress has expressly given priority to the payment of indebtedness owing the United States, whether secured by liens or otherwise, by § 3466 of the Revised Statutes, 31 U.S.C. (1946 ed.) § 191. * * * Where the debtor is not insolvent, Congress has failed to expressly provide for federal priority, with certain exceptions not relevant here, although the United States is free to pursue the whole of the debtor's property wherever situated. * * *

"It does not follow, however, that the City's liens must receive priority as a whole. We believe that priority of these statutory liens is determined by another principle of law, namely, 'the first in time is the first in right'."

Continuing on page 86 of 347 U.S., on page 371 of 74 S.Ct., the court referred to the inchoate attachment lien involved in United States v. Security Trust & Sav. Bank, supra, and said:

"* * * Such inchoate liens may become certain as to amount, identity of the lienor, or the property subject thereto only at some time subsequent to the date the federal liens attach and cannot then be permitted to displace such federal liens. Otherwise, a State could affect the standing of federal liens, contrary to the established doctrine, simply by causing an inchoate lien to attach at some arbitrary time even before the amount of the tax, assessment, etc., is determined. Accordingly, we concluded in Security Trust 'that the tax liens of the United States are superior to the inchoate attachment lien * * *'. In the instant case, certain of the City's tax and water-rent liens apparently attached to the specific property and became choate prior to the attachment of the federal tax liens."

The Connecticut court, from which the appeal was taken in New Britain, suggested that the mortgagee could have paid the delinquent real estate taxes and water rents; that the amount so paid would become part of the mortgage debt covered by the mortgage lien; and that the federal tax lien would, therefore, be invalid as to such amount by virtue of then § 3672, now 26 U.S.C.A. § 6323(a). While the Supreme Court declined to pass upon the merits of these suggestions since there had been no payment of City taxes and water rents by the mortgagee, it had this to say at page 88 of 347 U.S., at page 371 of 74 S.Ct.:

"The United States is not interested in whether the State receives its taxes and water rents prior to mortgagees and judgment creditors. That is a matter of state law. But as to any funds in excess of the amount necessary to pay the mortgage and judgment creditors, Congress intended to assert the federal lien. There is nothing in the language of § 3672 [now § 6323] to show that Congress intended antecedent federal tax liens to rank behind any but the specific categories of interests set out therein, and the legislative history lends support to this impression."

The case was remanded to the Connecticut court for a redetermination of the order of priority of the various liens asserted.

In the instant case, Perpetual contends that the court, in United States v. City

of New Britain, supra, abandons the choate lien test in noninsolvency cases but we reject this contention because it is clear that it did not do so; it merely held that not only must the competing lien be first in point of time, *but it must also be choate.*

Consistent with its prior position, the Supreme Court of the United States, in three opinions by Mr. Justice Minton, held that federal tax liens were entitled to priority over the following:

(1) An attachment lien under the laws of Ohio upon which judgment was not rendered until after recordation of the federal tax lien, United States v. Acri, 1955, 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264;

(2) A garnishment lien under the laws of Texas upon which judgment was not rendered until after recordation of the federal tax lien, United States v. Liverpool & London & Globe Ins. Co., 1955, 348 U.S. 215, 75 S.Ct. 247, 99 L.Ed. 268; and

(3) A landlord's distress lien obtained *after* the attachment of the federal tax lien but before it was recorded, United States v. Scovil, 1955, 348 U.S. 218, 75 S.Ct. 244, 99 L.Ed. 271.

In all of these cases, the competing liens were recorded prior in time to the federal tax lien, but they did not meet the other requisite established by the Supreme Court in New Britain, namely, *that the lien must also be choate.* As a basis for its conclusion in Acri and Liverpool & London & Globe Ins. Co., the Court simply refused to accept the state court's characterization of the lien as perfected and choate, and in Scovil it was held that a landlord is not a "purchaser" within the meaning of § 6323(a) (then § 3672) so as to be accorded priority.

Following the decision in United States v. Scovil, supra, the majority of the Supreme Court has spoken on this subject only five times and in each case by per curiam opinion. Three of these five opinions are neither enlightening nor helpful here. In United States v. Colotta, 1955,

350 U.S. 808, 76 S.Ct. 82, 100 L.Ed. 725, and United States v. Vorreiter, 1957, 355 U.S. 15, 78 S.Ct. 19, 2 L.Ed.2d 23, the court subordinated mechanics' liens to federal tax liens, and in United States v. Hulley, 1958, 358 U.S. 66, 79 S.Ct. 117, 3 L.Ed.2d 106, subordinated a prior recorded materialman's lien to federal tax liens. Since the Supreme Court did not clearly indicate its reason for such subordination, we are left to surmise and conjecture. However, it would seem that the cases could have turned on one or both of two theories: (1) The subordinated liens did not meet both the prior in time *and* choate tests; or (2) such liens are not protected interests under § 6323 (a).

Dissenting opinions were filed in the other two cases decided by the Supreme Court since the decision in United States v. Scovil and thus some discussion is merited. In the first of these cases, United States v. White Bear Brewing Co., 1956, 350 U.S. 1010, 76 S.Ct. 646, 100 L.Ed. 871, the court summarily, and without citation of authority, reversed a decision of the United States Court of Appeals for the Seventh Circuit, 227 F.2d 359, and held that a federal tax lien had priority over a recorded mechanics' lien, specific in amount, and on which a suit for enforcement had been instituted before the federal tax lien arose. There the only thing remaining to be done was the granting of a *final judgment* enforcing the lien. Mr. Justice Douglas dissented on the theory that the mechanics' lien was specific and perfected insofar as it could be under state law and said that, under the majority opinion, it would be impossible for a competing lien to ever prevail against a subsequent federal tax lien, short of reducing the competing lien to final judgment. He felt that the holding of the majority was not warranted by prior decisions and was supportable only if United States v. City of New Britain were overruled. We venture to suggest our impression that the conflict between the majority and dissenters in United States v. White Bear may have arisen from a difference in interpretation of

"choate lien" and not, as Perpetual suggests, that the real test is "prior in point of time" as opposed to "choate lien". At no place in either the majority or dissenting opinions is it suggested that a mechanics' lien was not a protected interest under § 6323(a).

The second of the cases (in which there was a dissenting opinion) decided since United States v. Scovil, namely, United States v. R. F. Ball Constr. Co., 1958, 355 U.S. 587, 78 S.Ct. 442, 446, 2 L.Ed.2d 510, for the first time presented to the Supreme Court, for decision, the question of *priority between a nonstatutory contractual lien* and a *federal tax lien*. There a subcontractor was required to furnish a surety bond. To induce the surety company to issue the bond, the subcontractor assigned all sums due or to become due under the subcontract as collateral security for any liability the surety company might incur through non-performance of the subcontract, and for the payment of other indebtedness for liability of the subcontractor to the surety company whether theretofore or thereafter incurred, not exceeding the penalty of the bond. Subsequently, the subcontractor incurred indebtedness to the surety company, independent of the subcontract. Certain funds became due the subcontractor but payment was withheld because of outstanding claims of materialmen against the subcontractor. Thereafter the United States filed federal tax liens against the subcontractor and the question was whether the assignment to the surety company made it a "mortgagee" within the meaning of § 3672(a) (now § 6323(a)). The majority of the court relied upon United States v. Security Trust & Sav. Bank, supra, and United States v. City of New Britain, supra, and held that since the assignment, the instrument involved, was inchoate and unperfected, the provisions of § 3672(a) did not apply. Mr. Justice Whittaker vigorously dissented and was joined by Justices Douglas, Burton and Harlan. It was their view that neither Security Trust nor New Britain was applicable because

neither was primarily concerned with § 3672(a). Therefore, they were of the opinion that the assignment was, in legal effect, a mortgage and that inasmuch as it antedated the filing of the federal tax liens, it was superior to them under the express terms of § 3672(a). In summarizing the position of the dissenters, Mr. Justice Whittaker said:

> "* * * I think it is clear that the assignment was in legal effect a mortgage, completely perfected on its date, in all respects choate, and valid between the parties; and inasmuch as it antedated the filing of the federal tax liens it was expressly made superior to those liens by the terms of § 3672(a)."

Perpetual urges that the opinion of the majority in the Ball Construction Co. case could be supported only by a finding that the assignment was not a mortgage; and if the majority had determined that the protected interests mentioned in § 3672(a) should be subject to the choate lien test, there would certainly have been a full opinion announcing a decision of such moment. Perpetual's argument is unacceptable to us. The per curiam opinion in Ball Construction Co. clearly states the reason upon which the decision is based, namely, that the instrument is inchoate and unperfected. Both of the cases cited by the majority, Security Trust and New Britain, set forth the choate lien test, a further indication of the basis of the court's opinion. Here again, as in United States v. White Bear Brewing Co., we venture to suggest a conflict between the majority and the minority as to the interpretation of "choate lien". However, we do not perceive any real conflict of opinion as to the applicable rule of law.

[5] We have derived an indelible impression from the cases (involving determination of priority of federal tax liens over competing liens) decided by the Supreme Court, which reveal the persistent application of the choate lien test, *first in insolvency cases, then in statutory lien cases, and finally in nonstatutory contractual lien cases.*

The United States places great reliance upon the recent case, United States v. Christensen, 9 Cir., 1959, 269 F.2d 624. In that case, a mortgage had been executed on November 22, 1943, covering certain real property owned by the taxpayer. On January 19, 1950, federal tax liens were filed against mortgagor, taxpayer. On December 12, 1955, the United States instituted an action for the collection of the taxes and sought to foreclose its lien against the mortgaged property. On January 3, 1956, mortgagee redeemed a tax sale certificate for local real estate taxes on the mortgaged property and, on the same day, paid delinquent taxes on the same property. The District Court entered judgment which, though generally favoring the United States, gave the mortgagee priority over the federal tax lien for the amount remaining due under the mortgage and for the real estate taxes which mortgagee had paid. The United States appealed from that portion of the order which allowed priority of the real estate taxes paid after the federal tax liens were recorded, and the Court of Appeals reversed, relying primarily upon the case of United States v. City of New Britain, supra.

Although in its brief Perpetual contends that the Christensen case is distinguishable on its facts from the case at bar, during oral argument counsel conceded that an examination of the record discloses factual similarity. In undertaking to discourage our acceptance of the Christensen decision, Perpetual presents the following arguments: (1) "although the case recites that the mortgagee contended for a contractual right to priority, the decision appears to have gone off on the questions of whether the priority of a federal tax lien is a federal question and whether the mortgagee, becoming subrogated to the right of the local taxing authority, might prevail over the federal tax lien"; and (2) "further, the mortgagee in Christensen does not appear to have argued the effect of § 6323(a) on the priority of lien question presented".

■ We believe these arguments to be without merit. First, while the court in Christensen did discuss the well settled principle that the priority of a federal tax lien is a federal question, it dismissed the mortgagee's contention of priority by subrogation to the rights of the local taxing authority and based its decision on the test set forth in United States v. City of New Britain. Although the opinion does not disclose that the mortgagee *argued* the effect of § 6323(a), the court did note that section and then applied the New Britain rule that the priority of the competing lien must depend *upon the time it attached and became choate.* As before stated, this rule was extended by the Supreme Court to nonstatutory contractual liens in United States v. R. F. Ball Constr. Co., 1958, 355 U.S. 587, 78 S. Ct. 442, 2 L.Ed.2d 510. Therefore, in view of the persistent application of the "choate lien test" by the Supreme Court, which doctrine was recognized and followed by the Ninth Circuit in United States v. Christensen, supra, we reach the conclusion in the instant case that the claimed priority for payment of the real estate taxes accruing after recordation of the federal tax liens, even though made pursuant to an authorized provision of a prior recorded mortgage, must be subordinated to the federal tax lien because such lien so acquired by the mortgagee was unperfected and inchoate at the time the federal tax liens were recorded.

■ For the same reasons, we must subordinate to priority of the federal tax liens the claim for an attorney fee paid by Perpetual in protection of the lien of its mortgage. The fee was incurred long after the attachment of the federal tax lien; and at the time of the execution of the mortgage and the creation of the debt secured thereby, the future existence or amount of such attorney fee was, at best, speculative and uncertain.

As to Perpetual's claim to reimbursement for its payment of an attorney fee, we are cited to United States v. Seaboard Citizens Nat'l Bank, 4 Cir., 1953, 206 F.2d 62, 64. Therein, an automobile that

was subject to a mortgage was seized and forfeited by the United States for violation of the Internal Revenue laws (liquor). The mortgagee filed its petition asking for remission of the forfeiture to the extent of its mortgage interest pursuant to the provisions of 18 U.S.C.A. § 3617.[6] The District Court granted such petition and allowed, as a part of the secured mortgage debt, a fifteen per cent attorney's fee, provision for which was specifically made in the default provision of the mortgage. This court affirmed the District Court stating that: "The contingent liability for attorney's fees having become absolute, there was no reason why the remission should not extend to this as well as to the other parts of the obligation secured." Earlier in the opinion, the court considered and accepted as authority Security Mortgage Co. v. Powers, 1928, 278 U.S. 149, 49 S.Ct. 84, 86, 73 L.Ed. 236. In neither Seaboard nor Security Mortgage v. Powers was a lien for delinquent federal taxes involved. The opinion in Seaboard does not disclose whether default in the payment of the mortgage occurred prior or subsequent to seizure and forfeiture of the mortgaged property.

In Seaboard it was stated:

"The argument that the government will be burdened by allowing such fees to be included in the lien as to which remission is granted is without foundation. The government does not pay the fees. They are paid out of the proceeds of the property condemned. * * *"

In the instant case, the amount derived from the sale of the property was far from sufficient to pay the mortgagee's principal debt, interest, unpaid and delinquent real estate taxes, an attorney fee and the Government's claim for unpaid taxes as represented by its recorded liens. The amount to be received by the Government from the proceeds of sale is correspondingly reduced by all prior payments from the available fund, and thus the direction of payment of an attorney fee prior to payment of federal taxes is the equivalent of a direction to pay such fee out of the federal treasury. In the Seaboard case, any amount received by the United States from sale of seized property was unanticipated revenue, a windfall, not to be credited as a payment on a fixed indebtedness.

██ It is important to note the legislative purpose in enacting the statutes involved in the case at bar and in the Seaboard case. As was indicated in United States v. Security Trust & Sav. Bank, supra, the purpose of the federal tax lien statute is to insure prompt and certain collection of taxes due the United States from tax delinquents. The courts have consistently held that the property of a delinquent taxpayer must be first applied to the satisfaction of the claims for federal taxes except in the specific instances listed in § 6323(a). On the other hand, the plain intention of the Congress in enacting laws providing for seizure, forfeiture and disposition of property used in violation of the Internal Revenue laws, particularly 18 U.S.C.A. §§ 3615 and 3616, was not to secure to the United States any claim for indebtedness already determined, but was to exact a penalty for violating the law. Therefore, the zealous protection of the revenues of the United States would not appear to be of paramount importance in the enactment of the seizure and forfeiture statutes as in the enactment of the federal tax lien laws. Section 3617 of 18 U.S.C.A. prevents the forfeiture claim of the United States from being absolute and provides that the court may decree remission of the forfeited vehicle if, upon proof of good faith, it is satisfied that an innocent creditor would otherwise be de-

6. "§ 3617. Remission or mitigation of forfeitures under liquor laws; possession pending trial—(a) jurisdiction of court
"Whenever, in any proceeding in court for the forfeiture, under the internal-revenue laws, of any vehicle or aircraft seized for a violation of the internal-revenue laws relating to liquors, such forfeiture is decreed, the court shall have exclusive jurisdiction to remit or mitigate the forfeiture.
"(b) * * *
"(c) * * *
"(d) * * *"

prived of his right to security. Since no strict test has been evolved under this statute to determine the extent of the security of the mortgage as against the forfeiture claimant, this court, in the Seaboard case, gave effect to the Virginia law which allowed an attorney fee as a part of the secured interest. But, from the cases hereinbefore cited, we find the federal courts refusing, in cases involving a determination of priority of federal tax liens, to accept the characterization and classification, by state courts, of liens created and asserted under state law. Here, we are governed by the well established principles laid down by the Supreme Court in cases determining priorities of federal tax liens under §§ 6321, 6322 and 6323 of 26 U.S.C.A. wherein the court has assiduously protected the tax claims of the government. Although our decision under the facts and circumstances of the instant case cannot be construed as overruling United States v. Seaboard Citizens Nat'l Bank, supra, we cannot here accept the case as supporting Perpetual's claim to allowance of a reasonable attorney fee prior to the tax liens of the United States.

Accordingly, judgment of the District Court will be reversed and the case remanded for further proceedings consistent with the views herein expressed.

Reversed and remanded.

HAYNSWORTH, Circuit Judge (dissenting).

There are implications in the decisions of the Supreme Court which support the view of my brothers, but I find in those decisions no clear command which governs us here. Since we enter upon a new, judicially-untilled field over which Congress has exercised its right of control, it seems appropriate to consider the meaning of the statute which directs us to prefer prior mortgagees to the United States claiming under a tax lien.[1] If the question be not foreclosed by decisions of the Supreme Court, and I think it is not, we should not transplant rules developed for the classification of interests which enjoy no statutory preference into a new field to restrict recognition of the preference of interests that do, unless, of course, there is reason to attribute to Congress an intention that the preferred and unpreferred interests should be classified under the same rules in order to determine their standing in relation to the tax lien.

When the Supreme Court adopted the rule of "the first in time is the first in right"[2] for the purpose of classifying liens competing, without the benefit of a statutory preference, with the tax lien, substantial qualification was essential if the tax lien was not to be emasculated. Among the many liens and priorities recognized by the laws of the states, most were far from the standing of those interests which Congress had selected for preferential treatment. Without substantial qualification of a simple rule of priority in time and a reserved right of federal classification, such interests, created and controlled by the states, would threaten frustration of the tax lien.

A state's provisional remedies may provide a number of interlocutory liens, but the possessor of such a lien need not be classified with the judgment creditor whom the statute prefers. The litigant who commences his action by attachment entertains some hope of becoming a judgment creditor, but he may encounter many a pitfall along the way. As a judgment creditor, he is in the embryonic stage. His attachment may be perfected in itself, but, viewed as a first step toward ascent to the preferential status of a judgment creditor, it is neither perfected nor completed.

The Supreme Court might have said, as Mr. Justice Jackson did say,[3] that all interests should be deferred to the tax lien save only those which Congress chose to prefer. Resort to the inchoate test,

---

1. 26 U.S.C.A. § 6323(a).

2. United States v. City of New Britain, 347 U.S. 81, 74 S.Ct. 367, 370, 98 L.Ed. 520.

3. United States v. Security Trust & Sav. Bank, 340 U.S. 47, 71 S.Ct. 111, 95 L. Ed. 53.

applied to the competing lien,[4] approached the same result. At least, it avoided the necessity of treating the lien products of a state's provisional remedies as judgments.[5]

In a series of cases,[6] the Supreme Court held that antecedent mechanic's liens, which are supported by no statutory preference, were deferred to the tax lien. We may infer that a majority of that Court regarded the mechanic's liens as inchoate within the meaning of the rule developed for the classification of deferred interests. It is difficult to understand how a mechanic's lien, duly filed and recorded and presently in the process of being foreclosed, a specific lien against specific property for a specific amount, may be said to be inchoate, unless it is viewed as an interim step in the lienor's progress toward the status of a judgment creditor and the foreclosure of all possible defenses to his claim. Such a view may not be inappropriate, however, in light of the fact that Congress has selected certain interests for preferential treatment, among them those of a judgment creditor, not those of a me-

chanic's lienor.[7] In such a view, there is apparent analogy between the mechanic's lien and the lien product of provisional remedies.[8]

In only two cases in the Supreme Court is there any intimation that the inchoate test has any place in the classification of preferred interests.

In New Britain,[9] the immediate conflict was between the tax lien and a municipality's liens for ad valorem taxes and water rents. There was no statutory basis for preferment of the municipality's claims, but the Supreme Court held those which were fully accrued when the tax lien attached should be preferred while those which were not then accrued were inchoate and should be deferred. In its rule of distribution, however, funds allocable to a mortgage debt were directed to be applied first to those claims of the municipality which were deferred to the tax lien but, under state law, preferred to the mortgage lien. The result of the rule of distribution was a recognition of the preference of the mortgage lien, but only secondarily for the benefit of the mortgagee, to whom the statutory

---

**4.** The test seems never to have been directed to the tax lien. Here the tax lien was recorded when the taxpayer's substantive tax liabilities were being litigated in this Court. See Bond v. Commissioner, 4 Cir., 232 F.2d 822. It may issue upon a jeopardy assessment long before a determination of the substantive tax liability. 26 U.S.C.A. § 6861.

**5.** United States v. Security Trust & Sav. Bank, 340 U.S. 47, 71 S.Ct. 111, 95 L. Ed. 53; United States v. Acri, 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264; United States v. Liverpool & London & Globe Insurance Co., Ltd., 348 U.S. 215, 75 S. Ct. 247, 99 L.Ed. 268; United States v. Scovil, 348 U.S. 218, 75 S.Ct. 244, 99 L. Ed. 271.

**6.** United States v. Colotta, 350 U.S. 808, 76 S.Ct. 82, 100 L.Ed. 725; United States v. White Bear Brewing Co., 350 U.S. 1010, 76 S.Ct. 646, 100 L.Ed. 871; United States v. Vorreiter, 355 U.S. 15, 78 S.Ct. 19, 2 L.Ed.2d 23.

**7.** In this sense, the tax lien would appear to be always inchoate. It is not self-enforcing. It protects and fixes the property rights of the United States, but is

enforceable by a civil action. See 26 U.S.C.A. § 7403.

**8.** What is most troublesome about the mechanic's lien cases is really a different question: Whether Congress ever intended the tax lien to appropriate, without compensation, the property and interests of others than the taxpayer, others who have no legal or moral obligation to pay the tax debt. When the tax lien seizes property, the real value of which has been largely enhanced by the lienor's labor and materials, it appropriates values which the mechanic had created and which are his, in an economic sense, until he is compensated and his lien or right to a lien is discharged. The seizure of such values seems an unjust enrichment of the United States at the expense of the mechanic, not that of the taxpayer.

As suggested, this is a different question. Its answer perhaps should come from the Congress. In any event, the mechanic's lien cases in no way suggest that the rule applied in the classification of deferred interests should be employed to classify preferred interests.

**9.** United States v. City of New Britain, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520.

preference is granted, and primarily for the benefit of a lienor having no statutory claim to preferment.

If it may be said that New Britain's rule of distribution withholds full recognition of the mortgagee's statutory preference, there is no answer to the problem which would not be open to similar criticism. If the claims for accruing taxes and water rents had been subordinated to the mortgage debt, they would have been deprived of recognition of the priority to which they were entitled under state law. If they had been preferred over the tax lien, the tax lien would have been denied the priority which the Supreme Court had held it to have. There was inconsistency in the relative priorities of the multiple claims which no rule of distribution could eliminate.

That the Supreme Court made the choice it did, under those circumstances, does not lead to the conclusion that, under other circumstances, in which there is no necessity for arbitrary selection, it would narrowly construe the congressional command or restrict it by the importation of judicially developed rules for the classification of unpreferred interests.

In New Britain, reference was made to the situation with which we now deal, but decision upon it was expressly reserved. The reservation, in light of the dissimilarity of the problem in New Britain, leads to the conclusion that the decision in New Britain in no way settles the question here.

In Ball Construction Co.,[10] it is clear that the lower courts [11] and the four dissenters regarded the assignment, as collateral security for the payment of future indebtedness, of the account receivable as tantamount to a mortgage and were of the opinion that the assignee should be treated as a mortgagee within the meaning of the preference statute. I understand my brothers to attribute the same

opinion to the majority and to construe Ball Construction as a holding that a mortgagee is not entitled to the preferential treatment the statute commands to the extent the mortgage debt is inchoate when the tax lien is recorded.

Theirs is a not unreasonable interpretation of the brief per curiam opinion. A different interpretation, however, seems equally reasonable and more likely. The very fact that the views of the majority were unelaborated in their summary disposition of the issue suggests an absence of an intention to effect a novel extension of a particular rule devised to meet dissimilar conditions. One would suppose that, had the majority intended to decide an important question never before considered by the Supreme Court, it would have stated the considerations which led to its resolution of the issue.

It seems more likely than not that the majority in Ball Construction were of the opinion that the assignee was not a mortgagee within the meaning of the statute. While it was contended that, under the laws of Texas, the assignee was a mortgagee, a similar contention had been rejected in Gilbert Associates.[12] There, the Town had contended that its liens, under the law of New Hampshire, gave it the status of a judgment creditor. The court held, however, that the words of the statute should be given their ordinary, common-law meaning. It concluded that one who held no judgment was not a judgment creditor, within the meaning of the statute, though, under state law, he had the rights of one. So, the majority in Ball Construction may well have been of the opinion that an assignee, as collateral security, of an account receivable is not a mortgagee within the meaning of the statute, though, under state law, the assignee has the rights of a mortgagee.

The majority in Ball Construction did not characterize the assignment as a

---

10. United States v. R. F. Ball Construction Co., 355 U.S. 587, 78 S.Ct. 442, 2 L.Ed.2d 510.

11. R. F. Ball Construction Co. v. Jacobs, D.C.W.D.Tex., 140 F.Supp. 60, affirmed

sub nom. United States v. R. F. Ball Construction Co., 5 Cir., 239 F.2d 384.

12. United States v. Gilbert Associates, Inc., 345 U.S. 361, 73 S.Ct. 701, 97 L.Ed. 1071.

mortgage. It simply said that the "instrument" being inchoate, the statute preferring specific claimants did not apply.

This is consistent with the entire course of decision in the Supreme Court. Attachment liens, mechanic's liens and other liens, in themselves perfected and complete, had consistently been characterized as inchoate because they had not matured into judgments, and, therefore, had not been brought within the protection of a statute granting a preference to judgment creditors. If the conditional assignee of a receivable is not a "mortgagee" within the ordinary, common-law meaning of that word, he held a security interest which might have ripened into a judgment. In this view, it was appropriate for the majority to say that the unripened interest was inchoate and beyond the protection of a statute preferring judgment creditors.

The supporting citations [13] have nothing to do with the question whether rules devised for the classification of congressionally unpreferred interests should be applied to defer congressionally preferred interests. Each of the two cited cases dealt with congressionally unpreferred interests. Their citation suggests the majority thought the interest of the assignee comparable to that of the attaching creditor and the municipal lienor, whose only claim to statutory preferment was that their interests, in the future, might ripen into judgments.

If the decision in Ball Construction has not foreclosed the present question, and it seems to me far from certain that it has, it is incumbent upon us to focus our attention upon the statute which confers a preference upon a "mortgagee" and to inquire whether the statute should be so construed as to withhold preferential treatment from one, indisputably a mortgagee, to the extent the mortgage debt is uncertain in amount or not fully accrued when the tax lien is recorded.

This, the crucial question, need not detain us long. If our view of the statute be not obscured by rules developed for the deferment of unpreferred interests, it seems clear that the words of the statute were used in their "usual, conventional sense." [14] The Congress did not prefer the principal of the mortgage debt; it preferred the mortgagee. If the word is to be given its usual meaning the preference cannot be limited to the mortgagee's right to repayment of the principal of the mortgage debt. It extends to all those rights which the Congress must have known the mortgagee commonly and usually possesses.

Provisions in mortgages requiring or permitting the mortgagee to discharge ad valorem tax liens and extending the mortgage lien to such disbursements, as well as to the expense of enforcement of the mortgagee's rights, are commonplace. There is nothing novel in recognition of the fact that the protection of the mortgage lien extends to such disbursements and expenses, made pursuant to such provisions, as fully as to the principal of the mortgage debt itself. It is a usual and conventional right of a mortgagee. When Congress created the preference, such rights of the mortgagee were generally recognized in commerce and in law. If we are to give the language of the statute its usual and ordinary meaning, we cannot deny to the mortgagee his usual and ordinary rights. Since the statute confers the preference upon the mortgagee, it seems to require us to recognize the preference, at the least, to the extent that his preference has been traditionally and commonly recognized in the state courts. I see no reason to suppose that Congress intended the preference it commanded to differ in kind and quality from the preference the selected classes have enjoyed historically and, in

13. United States v. Security Trust & Sav. Bank, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53; United States v. City of New Britain, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520.

14. United States v. Gilbert Associates, Inc., 345 U.S. 361, 73 S.Ct. 701, 703, 97 L.Ed. 1071.

commercial circles, are generally thought to have.

While the question is novel in this court, and, I believe, open in the Supreme Court, there are analogies that bear mention.

A mortgagee's collection out of the security of attorney's fees incurred after the mortgagor's adjudication in bankruptcy was resisted upon the ground that the claim was contingent at the time of adjudication and, therefore, not provable. The Supreme Court held there was no need to prove the claim for the right to attorney's fees was fully protected by the mortgage lien from the time that lien first attached.[15] In the opinion it was said, "The lien was not inchoate at the time of the adjudication."

This Court dealt with a similar problem when attorney's fees were incurred by a mortgagee after forfeiture of the mortgaged vehicle to the United States.[16] We held the right to attorney's fees fully protected from the date the mortgage lien attached, saying, "The lien for attorney's fees was not inchoate at the time of the offense."

As the rules have been developed in the tax lien cases, the claim for attorney's fees was inchoate when the tax lien attached. Perhaps we may say as the Supreme Court said in the bankruptcy case that the lien which supports the claim was not inchoate. Whether we do or not, we should reach a similar result here, for no valid reason appears for reading limitations into the preference statute which the language of the statute does not contemplate.

The specific question has arisen in other courts.

The mortgagee has been held preferred with respect to attorney's fees and similar expenses incurred after the tax lien was recorded,[17] and with respect to state taxes paid by the mortgagee.[18] The mortgagee's preference with respect to accruing interest has been generally recognized.[19] Perhaps the right to interest accruing at an agreed rate could pass the inchoate test, but to a substantive recognition of the mortgagee's preference, his right to be secure in his income is hardly so important as his right to be secure in making disbursements necessary for the protection or preservation of the mortgage lien and for the collection of the principal of the mortgage debt.

15. Security Mortgage Co. v. Powers, 278 U.S. 149, 49 S.Ct. 84, 73 L.Ed. 236.

16. United States v. Seaboard Citizens Nat'l Bank of Norfolk, 4 Cir., 206 F.2d 62.

17. United States v. Halton Tractor Co., 9 Cir., 258 F.2d 612; United States v. Sampsell, 9 Cir., 153 F.2d 731; Smith v. United States, D.C.Hawaii, 113 F. Supp. 702; Bank of America Nat'l Trust & Savings Ass'n v. United States, D.C. S.D.Cal., 84 F.Supp. 387; Ormsbee v. United States, D.C.S.D.Fla., 23 F.2d 926; cf. in re New Haven Clock & Watch Co., 2 Cir., 253 F.2d 577, in which the inchoate test was used to deny priority for a similar disbursement.

18. United States v. Miller, D.C.S.D.Fla., 55–1 USTC, par. 9484; cf. United States v. Christensen, 9 Cir., 269 F.2d 624 and United States v. Lord, D.C.N.H., 155 F. Supp. 105. The result in Christensen, preferring the tax lien to the·extent the mortgage secured disbursements for state taxes, was reached on the basis of a generalized notion of federal supremacy. Such a notion seems out of place when Congress, itself, has decided to prefer the mortgagee over the United States claiming under its tax lien.

See also, Peoples Bank v. United States, D.C.N.D.Ga., 98 F.Supp. 874, extending the priority of the mortgagee to subsequent advances under an open-end mortgage, reversed upon the ground that the subsequent advance was a separate transaction unsecured by the lien of the first mortgage. United States v. Peoples Bank, 5 Cir., 197 F.2d 898.

19. United States v. Halton Tractor Co., 9 Cir., 258 F.2d 612; Jefferson Standard Life Insurance Co. v. United States, 9 Cir., 247 F.2d 777; United States v. Sampsell, 9 Cir., 153 F.2d 731; Glenn v. American Surety Co., 6 Cir., 160 F.2d 977; United States v. Lord, D.C.N.H., 155 F.Supp. 105; Bank of America Nat'l Trust & Savings Ass'n v. United States, D.C.S.D.Cal., 84 F.Supp. 387; Ormsbee v. United States, D.C.S.D.Fla., 23 F.2d 926.

Believing, as I do, that the statute should govern our decision and that it requires a recognition of the preference the mortgagee has enjoyed generally and historically, I would affirm.